## TONY REHAK v. ST. PAUL TERMINAL WAREHOUSE COMPANY AND ANOTHER.[1]

October 13, 1939.

No. 32,127.

*Louis F. Soukup,* for relator.
*Jensen, Priest, O'Hearn & Prins,* for respondents.

HOLT, JUSTICE.

*Certiorari* to review a decision of the industrial commission refusing to reopen, and adopting and affirming the findings of the referee.

In denying relator's motion to reopen the case for the taking of further testimony, after the referee's decision, the commission was in the exercise of judicial discretion, and there is no indication in the record of an abuse of such discretion. There is a contention that since there was a division of opinion between the medical experts heard by the referee as to the cause of relator's present disability, the commission acted contrary to law in deny-

[1]Reported in 288 N. W. 22.

ing the application to reopen the case and appoint a neutral medical expert for the purpose of expressing his opinion. We do not think there is anything in the workmen's compensation law making it obligatory on the commission to appoint a neutral medical expert whenever there has been a conflict of opinion among the medical experts heard. Notwithstanding such conflict, it is for the commission to determine whether or not more evidence is desirable or needful to arrive at a decision.

On the merits of relator's claim to more compensation than awarded, the assignment attacking the VII finding of fact as not being supported by sufficient evidence presents the vital question for review. That finding is:

"That some time subsequent to the date of the above-mentioned accident the petitioner became afflicted from natural causes and diseases which have rendered a permanent partial disability to the right arm, which permanent partial disability cannot be at this time determined."

Two medical experts in behalf of relator testified that his present disability resulted from the accidental injury received in his employment March 7, 1936, and two equally competent medical experts testified that in their opinion such accidental injury did not cause or contribute to the present disability. It is plain that under settled law this court cannot disturb a finding depending upon medical expert opinion where the opinions given are in conflict. The only two authorities cited by relator clearly so hold, *viz.*, Jones v. Excelsior Laundry Co. 183 Minn. 531, 237 N. W. 419; Sivald v. Ford Motor Co. 188 Minn. 463, 247 N. W. 687. It is for the trier of fact to determine which opinion is the better as applied to the facts and circumstances established by the evidence. There is no dispute but that relator, at work at his employer's warehouse with a fellow employe, was accidentally injured in the forenoon of March 7, 1936. A freight car was spotted at the warehouse platform. The sill of the car door was about the same height as the platform. One could stand with one foot on the platform and the other on the doorsill. Relator and his

coemploye were placing a steel plank to connect the platform with the car door so that sugar sacks might be trucked across the gap between the car and platform. Relator spoke English with difficulty, and it is not made clear just how the steel plank was handled. It weighed about 200 pounds and was about 8 feet long having some flanges on the edges so as to prevent the truck wheels from going off the plank. It is to be inferred that the two had the plank ready to drop in place and each had one foot on the platform and the other on the doorsill, facing each other, holding the plank between them, and that the coemploye dropped his side before relator let go, thereby causing a sudden jerk or twist of his right shoulder. Relator was knocked from his position but landed on his feet. The plank fell in the place intended. It is conceded that a compensable injury was done to some nerve or muscle of the right shoulder, and certain compensation was paid and some more allowed by the referee. While there is a difference in the measurements of the arms indicative of some atrophy in the muscles of the right arm, there is no loss of strength in the grip of the right hand or in the functions of the forearm. The X-rays reveal no bone injury. The disability now claimed is the pain felt in the shoulder when attempting to raise the right arm, relator asserting that, whereas before the accident he could hoist a hundred-pound sugar sack upon a pile as high as his head, now he could not lift it half as high. Relator's experts are of the opinion that the accident of March 7, 1936, tore or severed the suprascapular nerve supplying the infra- and supraspinatus muscles, resulting in their atrophy and causing the present disability. Respondents' experts also discover atrophy now taking place in the same muscles on the left shoulder and therefrom are strengthened in their opinion that relator has contracted some disease of the nerves, not traceable to the accidental injury, which causes the present condition of relator's muscles. They also point to the fact that the deltoid muscle, the one mainly instrumental in elevating the arm, also supplied by the suprascapular nerve supplying the spinatus muscles, is not perceptibly atrophying. The triers of fact, like the medical experts, could take

into consideration that the injury occurred under such circumstances that no one would anticipate much of any injury therefrom. In no reasonable view of this record can it be successfully asserted that the quoted finding of the commission lacks evidence to sustain it.

The writ is discharged and the decision sustained.