## ARTHUR LELAND v. ST. OLAF LUTHERAN CHURCH AND ANOTHER.[1]

June 26, 1942.

No. 33,248.

*Arthur LeSueur,* for relator.
*W. R. Selb* and *C. A. Stark,* for respondents.

GALLAGHER, CHIEF JUSTICE.

*Certiorari* to review an order of the industrial commission denying relator's petition for a rehearing.

The accident here involved occurred on February 4, 1938. Relator filed a petition for compensation with the industrial commission on August 30, 1938. Hearings were had before a referee on October 27 and 28, 1938, and on May 4, 1939. On the latter date the parties stipulated for a settlement whereby respondents agreed to pay, and relator agreed to accept, $350 in "full, final

[1]Reported in 4 N. W. (2d) 769.

and complete settlement" of his claims. One hundred dollars was to be paid to relator's attorneys, and out of the balance he agreed "to assume any and all obligations which he has incurred heretofore by way of medical, hospital or other items of expense." On May 6, 1939, the referee filed findings of fact and an award based on the stipulation.

On June 28, 1940, relator filed a petition with the commission to vacate the award and grant a rehearing. It was supported by the affidavit of Dr. Myron O. Henry. Respondents filed objections to the rehearing and in support thereof presented the affidavits and reports of three medical experts who had examined relator at their request. On December 21, 1940, the commission denied the petition to vacate. About a year later relator presented a second petition to vacate, supported by the affidavits and reports of four doctors. Respondents filed objections to this petition and supported their objections by the affidavits and reports of three doctors. This petition was denied on December 27, 1941.

On January 22, 1942, relator filed a third petition (the one here involved) entitled: "Petition to vacate findings and award of the industrial commission of date December 21, 1940, and the decision of the industrial commission refusing to open the award of date December 29, 1941, and filed on December 29, 1941." It contains a request "to reopen the original hearing for further testimony." We will treat the petition as one for a rehearing under Mason St. 1927, § 4319. It was denied on March 2, 1942. The order of denial states:

"Said matter has been considered and determined on the petition of Arthur Leland filed herein on January 22, 1942, the objections of St. Olaf Lutheran Church and Standard Accident Insurance Company filed herein on January 28, 1942, the affidavit of Mrs. G. Sherwin Crandall filed February 17, 1942, and upon all the records, files and proceedings herein."

It is therefore apparent that in denying relator's last petition the commission considered the testimony presented to the referee

and all of the affidavits and medical reports submitted in support of and in opposition to his prior petitions for rehearing.

Relator was acting as assistant pastor of St. Olaf Lutheran Church in Minneapolis at the time of the accident here involved. As he was leaving the church office for the purpose of visiting sick parishioners, he slipped on the top step and fell down six steps to the sidewalk, landing on his "left lower buttocks and hip." He was assisted to the church office, where he rested for about 15 minutes, and then went on his mission by automobile. He claims that when he undressed that evening he observed a discoloration in the region of the left lower buttocks; that it pained and ached that night and was "stiff and painful" the following day and for a long time thereafter. In short, it is his present claim that he suffered a severe injury to his back in the fall and that he has been totally disabled most of the time since the accident.

Relator carried on his church duties until March 13, 1938, when it became necessary to discontinue them because of a throat ailment which affected his speech. Dr. C. A. Strunk was called to his home a few days later, and on March 20 he entered St. Andrews Hospital in Minneapolis, where he remained under Dr. Strunk's care until March 26. During the time he was in the hospital cold packs were applied to his throat, but he did not receive treatment for his back.

During the succeeding months relator consulted a number of doctors. For a few months he remained under the care of Dr. Strunk, who referred him to Dr. G. M. Koepcke, a throat specialist. During the summer of 1938 he was treated by Dr. Ralph Dahle, a chiropractor, with ultraviolet and infrared light treatments for his back. In October 1938 he consulted Dr. Wallace Cole and Dr. G. A. Williamson, orthopedic specialists. They taped his back and recommended that the light and heat treatments be continued. In the fall of 1938 he consulted Dr. Robert Evans and was given diathermy treatments. Dr. Evans fitted him with a sacroiliac belt, which he wore for some time. In July 1939 he was examined at the Mayo Clinic. He also consulted Dr.

George Dunn and at his suggestion entered Northwestern Hospital. On January 2, 1940, relator was examined by Dr. Myron O. Henry, who concluded that he had probably sustained "an acute back strain with some injury to the inter-vertebral discs." Dr. Henry referred him to Dr. J. Grafton Love of the Mayo Clinic for consultation.

Relator returned to the Mayo Clinic on February 28, 1940. A reëxamination at that time disclosed that "there had been a change in the left Achilles reflex since the time of the previous visit." An intraspinal visualization with air and X-ray plates revealed "a deformity at the lumbosacral interspace." A "compression deformity of the body of the first lumbar vertebra" was also revealed. On March 2 a surgical operation was performed, and "the ligamenta flava at the fourth and fifth lumbar interspaces were found to be thickened and abnormally fibrotic." In his affidavit Dr. Love, who performed the operation, states: "These were removed and were found to be such as we not infrequently see in cases of chronic low back and sciatic pain in which these symptoms have had their onset after an injury." The underlying discs were examined and found to be normal. Dr. Love further states: "I think it is reasonable to assume that Mr. Leland did have an injury to his back and that he had disease as a result of the injury, and that he reacted untowardly to a relatively minor injury." The operation, as stated by Dr. Love, was undertaken in an attempt to relieve the low back and sciatic pain and was not expected to relieve other symptoms complained of by relator.

Dr. Henry, Dr. F. E. Murphy, Dr. J. P. Murphy, all of whom examined relator, and Dr. Evans, who examined and treated him, were of the opinion that he had sustained a severe and disabling injury to his lower spine. We quote from the report of Dr. Evans dated October 18, 1941:

"I last examined Rev. Leland about four weeks ago. The complaints and physical findings were essentially the same as they were at the time of my first examination on December 7, 1938. It

is my sincere belief and opinion that Rev. Leland has been totally and continuously disabled since I first saw him in December, 1938. No human can efficiently do even sedentary work while his body is continuously tortured with severe and continuous pain, stiffness, weakness, and excessive fatigue."

Doctors R. F. McGandy, R. G. Allison, and H. B. Hannah, for the respondents, were decidedly of the opposite view. Dr. McGandy diagnosed relator's ailments as an acute lumbago and attributed his disability to a cold. Dr. Allison X-rayed him on a number of occasions and found no evidence of a trauma to the spine or elsewhere. Dr. Hannah was of the opinion that relator's disability was of a functional nature.

If we were to disregard the findings of Dr. Love, who operated on relator's back in March 1940, we should be compelled to hold that the conclusions of the commission were final, in view of the conflict in the opinions of the medical men as to the nature and extent of relator's injury. Rehak v. St. Paul T. W. Co. 206 Minn. 96, 288 N. W. 22; Ogrosky v. Commonwealth Elec. Co. 172 Minn. 46, 214 N. W. 765; Delich v. Thompson-Starret Co. 175 Minn. 612, 220 N. W. 408. But it seems to us that the commission failed to give due significance to the findings of Dr. Love. He may have been of the opinion that relator "reacted untowardly to a relatively minor injury," but he definitely found evidence of injury which he attributed to the accident. It must be remembered that no medical testimony was presented to the referee at the original hearing. There is nothing in the testimony before the referee to indicate injury to the spine except that of relator's unsupported complaints; in fact there appears to have been no suggestion of spine injury until Dr. Henry's examination in January 1940. It is not likely that the referee would have approved a settlement for $350 if the evidence had disclosed the existence of a spinal injury. In any event, it would appear that the operation later performed at Rochester was reasonably necessary, although it only partially relieved relator of his complaints and no allowance has been made for the expense thereof. The settlement stipulation

expressly limited the obligations relator agreed to assume for medical, hospital, and other items of expense to those "heretofore" incurred. No allowance was made for further medical expenses.

We find nothing in the record to account for the condition found by Dr. Love except the fall at the time here in question. There is no intimation that relator is a malingerer. Respondents' doctors claim that his condition is functional, and their testimony implies that he may be a neurotic. That, however, does not erase the positive findings of the doctor who operated on his back.

We conclude that a rehearing should be had, and we remand the case to the industrial commission for that purpose.

Order reversed and case remanded, with an allowance to relator of $100 attorney's fees.