E. C. BATCHELDER v. NORTHWESTERN HANNA FUEL COMPANY AND ANOTHER.[1]

January 9, 1948.

No. 34,450.

D. A. Bourgin, for relator.
Reynolds & McLeod, for respondents.

MAGNEY, JUSTICE.

Certiorari to the industrial commission to review an order dated January 31, 1947, denying relator's petition to vacate, upon the ground of mistake and changed conditions, an award of compensation and grant a rehearing to determine the extent of relator's disability.

On August 3, 1945, while relator, 58 years of age, was employed by respondent fuel company in the delivery of coal, he suffered injuries to his back when the tail gate of his employer's coal truck fell on him. He was taken to Northwestern Hospital in Minneapolis, where he remained one week. Dr. Harvey Nelson attended him. On August 20, he went to his home at Cusson, Minnesota. He placed himself under the care of Dr. Heiam of Cook, who referred

---

[1]Reported in 30 N. W. (2d) 530.

him to Dr. S. S. Houkom of Duluth for examination and suggestion as to treatment. On November 6, 1945, relator was examined by Doctors Harvey Nelson, R. G. Allison, E. J. Borgeson, and Hewitt B. Hannah, all of Minneapolis. Dr. Nelson, in his report after that examination, stated that the left dorsal and lumbar regions of the back in particular were struck by the tail gate; that when he first saw relator he had a fairly substantial injury to his back, and there was evidence of a rather severe contusion to the left dorsal and lumbar region; that two marks resulted from the accident, one brownish mark about six inches long extending diagonally across the left lower posterior ribs, and another mark about one inch long over the left posterior crest of the ilium. At the examination, relator described two areas of discomfort, one in the sacral and lumbosacral region, and the other in the left dorsal region adjacent to the spine. Relator also complained of discomfort in the left posterior neck which radiated down over the left shoulder, and also of headache. He also described a pain which seemed to start in the left lumbar region of the back and was associated with pain in the left lower quadrant and groin, extending up into the pubic region, also a tenderness in the left kidney area. Anteroposterior and lateral X rays were taken of the entire cervical, dorsal, and lumbar spine. The X rays of the cervical spine were negative. Those of the dorsal spine showed a considerable amount of hypertrophic arthritis, particularly through the region of the middorsal spine, where there was also a fairly marked scoliosis to the right and considerable kyphosis at the same area. There was no evidence of any fracture, dislocation, or bone injury, "with there not being as much hypertrophic arthritis as it is found in the middorsal area." When Dr. Nelson speaks of there being no fracture, we take it he refers to the spine. He compared the X rays taken on November 6 with those taken at Northwestern Hospital at the time of the accident, and he noted the same findings. Dr. Nelson concluded his statement by saying:

"* * * There are and have been no findings here of any serious injury which should result in permanent industrial disability."

Dr. Allison reported that upon examination he found irregular areas of calcification in the left kidney.

Dr. Borgeson, an eye specialist, stated that from the examination made on November 6, 1945, he found relator's eyes normal in every respect except for the contraction of visual fields. This he said was due to hysteria and not to the accident. Relator had stated that after he returned home to Cusson he went completely blind and remained so for two days.

Dr. Hannah stated that the blindness which relator mentioned was "an hysterical type of reaction"; that he found no pathology either in the eye or in the optic nerve head. Relator pointed to the place of injury in the lower dorsal and upper lumbar spine and said that he had pain on movement and on breathing. The X rays of the dorsal and lumbar spine were negative, except that he had a kyphosis of the dorsal spine and moderate hypertrophic changes in these areas. Dr. Hannah stated that relator has a "rather flat lower back" with a kyphosis forward, and that the motions of the back were limited in all directions to a rather marked degree when he attempted to bend. In Dr. Hannah's opinion, relator had a "rather flat back" before the accident, and, with disuse, there had been a decrease in the amount of motion in the lower back.

Dr. Houkom examined relator on September 17, 1945. Relator localized his pain in the left buttock and also in the left lumbar region. The doctor was of the opinion that relator had sustained a rather severe contusion of the soft tissue structures of the lumbar area of the spine, and that at the time of examination he presented definite evidence of disability. He recommended that relator be hospitalized, given intensive physiotherapy, and fitted with a brace. Dr. Houkom stated that the X rays apparently revealed a fracture of some of the lower ribs on the left side. Dr. Nelson in his report stated that relator had had some rib fractures in 1929.

Relator was hospitalized at Dr. Heiam's hospital at Cook from October 1 to October 12, but left without permission. The brace which was recommended was furnished him.

Relator drew compensation at $24 a week from the time of the accident until December 28, 1945.

On November 13, 1945, relator wrote to the insurer and asked what had become of the brace which had been recommended for him. Also, he stated that he wished to settle and wanted to know what terms the insurer would make. Lawrence Hazen, compensation counsel, in a reply to a letter from relator, wrote:

"We have your letter in which you inquire whether you can 'force a settlement' on your claim now. This must be answered in the negative. The compensation act contemplated periodic payments to cover the period of disability suffered as a result of an injury."

In a letter received by the insurer on November 30, 1945, relator again made inquiry as to what settlement the insurer would make with him. On December 3, 1945, insurer wrote:

"* * * We are willing, however, to consider some lump settlement with you but we wish it understood that any settlement which we make will include the expenses which you are claiming. We are forwarding to you our check in the sum of $50.00 which represents an advance payment of compensation. In addition to this payment of $50.00 we will pay you a sufficient sum of money to carry you through the winter which we figure to be $350.00."

On December 5, 1945, relator wrote the insurer as follows:

"* * * I will agree to a flat settlement of $400.00. If you agree to these terms send papers and check of $400.00 to the Farmers State Bank, Cook, Minnesota, and they will notify me and I will sign papers and have them sent back to you."

A stipulation for settlement was entered into, paragraphs V and VI of which read:

"That it is the contention of the employee, E. Batchelder, that as a result of his accidental injury of August 3, 1945, he will continue to be disabled either totally or partially from time to time and may be permanently and totally disabled on account of his injury of August 3, 1945.

"That it is the contention of the employer and insurer that the employee has not been disabled from December 7 and any disability suffered since that time are from causes entirely foreign to his employment with said North Western Hanna Fuel Company."

In addition to payments already made, amounting to $788.79, which represented 18 weeks' compensation at the rate of $24 per week and hospital and other medical expenses, the stipulation provided that the employer and insurer would pay, and relator would accept, in full, final, and complete settlement of any and all claims, "$400.00 * * * representing 40 weeks of temporary partial disability at the rate of $10.00 a week." On the above stipulation, the industrial commission on December 27, 1945, in addition to compensation and medical expenses already paid, awarded relator compensation—

"at the rate of $10.00 per week for forty weeks of temporary total disability of $400.00, to be paid in one lump sum. When said payment duly has been made same to constitute full and final settlement of any and all claims against the above named employer and insurer resulting from the accidental injury sustained by said employe August 3, 1945, while in the employ of the above named employer."

Checks were forwarded to relator. He complained to the commission concerning the settlement. Insurer wired that if checks were not satisfactory to return them. Relator refused to return the checks, but claimed that he still had $24 coming, and that one of the checks was unsigned through error. On January 6, 1946, insurer sent relator an additional check for $24 because there was "some question" concerning payments already made, and insurer stated that it would resolve whatever doubt there was in relator's favor. As relator did not return the final receipts requested, a notice of discontinuance of compensation payments was filed with the commission pursuant to M. S. A. 176.34, stating that its right to discontinuance was based on payment of "Lump sum in accord with award."

Through error, the award by the commission was worded: "$10.00 per week for forty weeks of temporary *total* disability," while the stipulation called for $10 per week for "40 weeks of temporary *partial* disability." (Italics supplied.) It was clearly a clerical error and is of no materiality or significance.

On November 23, 1946, relator signed a claim petition for compensation, stating that since stipulation and award he—

"finds that said injury has been aggravated and that he is now totally and permanently disabled by reason of said accident. That the medical experts in diagnosing the extent of petitioner's disability at the time were in error as to the extent of the petitioner's injury and as to the extent which same would have upon the petitioner. That as a result of petitioner's injuries sustained as aforesaid, by reason thereof and because of the aggravation of pre-existing arthritic processes caused by said accident, the petitioner has suffered total permanent disability to his back, spine and other parts of the body so that he is now totally and permanently disabled."

He asked that the matter be reopened and a rehearing had. Attached to his petition was an affidavit by Dr. C. C. Chatterton of St. Paul, who examined relator on October 29, 1946. He stated:

"* * * Lumbar spine shows definite arthritic changes. The lower dorsal spine shows Schmorl's syndrome of at least two vertebrae. On the left side there is also a very definite evidence this man has sustained fracture to ribs, at least two. X-ray shows marked lipping of dorsal spine pretty much throughout. The seventh dorsal is slightly deformed in that the right side is thicker than the left."

His conclusion was that relator had a painful spine and that he believed his accident of August 1945 was rather severe, in that he injured his spine and fractured ribs, which caused him to become inactive. He stated that it was his belief that relator was unable to do sustained manual labor because of the aggravation of the arthritic spinal change caused by the injury and resulting inactivity,

and that he was able to do only the lightest type of manual work. Dr. Chatterton concluded:

"Old arthritic spine which was severely injured if statements are true, but previous to accident had been able to work. Now back is stiff and rigid and he is unable to do sustained manual labor."

According to Dr. Nelson, the attending physician, there was no injury to the spine. The other physicians who examined relator up to November 6, 1945, also found no injury to the spine from the accident. They all found an old arthritic condition. The history Dr. Nelson received from relator disclosed that "he had some rib fractures in 1929." Dr. Chatterton in forming his opinion based it on "an old arthritic spine which was severely injured." He added, "if statements are true," that is, statements by relator. Dr. Nelson and the other physicians who examined relator found no fractured ribs and no injury to the spine as a result of the accident. It is fair to assume, therefore, that there was no severe injury to the spine and no ribs fractured in this accident. The statements made by relator on which Dr. Chatterton in large part based his opinion are not supported by the physical facts present immediately after the injury.

While the petition for reopening was pending before the commission and on January 7, 1947, relator sent to it a communication in which he stated that he was disappointed in its decision; that there never was intended to be a final settlement. He said:

"* * * Then I got a report from the Industrial Commission giving $10.00 per week for 40 weeks. That was false. I had at no time agreed to those terms or any like them and it stated that this was not a final settlement if I had any more trouble with the injury I was entitled to compensation."

We have already set out the correspondence that led up to the settlement and the stipulation upon which the award was made. No further comment is necessary.

On January 31, 1947, the commission denied relator's petition. We are asked to review that order.

The only question presented is whether the industrial commission, after having considered relator's petition, respondents' answer, all the affidavits, records, and files, together with the oral arguments, abused its discretionary power in denying relator's petition, so that it can be said that it acted arbitrarily or capriciously.

At the time the award was made based on the stipulation, the commission had before it the reports of Doctors Nelson, Borgeson, Hannah, Houkom, and Allison. We have already referred to them in detail. The commission had these reports before it again when it considered relator's petition to reopen. Before acting on the petition, the commission had before it the affidavit of Dr. Chatterton, previously mentioned, which was submitted by relator in support of his petition. The commission, in making its lump-sum award, based its order on the stipulation and the various medical reports submitted. In the stipulation, it was set out that relator contended that "he will continue to be disabled either totally or partially from time to time and may be permanently and totally disabled on account of his injury of August 3, 1945." Relator's arthritic condition was disclosed to the commission, so it was cognizant thereof when the lump-sum award was made. Respondents contend that relator's disability at that time did not stem from the accident, but from other causes, apparently having in mind arthritis.

In Ogrosky v. Commonwealth Elec. Co. 172 Minn. 46, 47, 214 N. W. 765, 766, the court said:

"* * * Whether the rehearing should have been granted rested in the discretion of the commission. [Citing cases.] The mere fact that we might have decided to the contrary does not mean that there has been an abuse of discretion on the part of the commission. Unless there has been a clear abuse of discretion we cannot disturb the order. In the absence of something to indicate that a discretionary power has been exercised arbitrarily, capriciously, or contrary to legal usage, we are bound by the result. So long as such discretion is exercised judicially the result is beyond our reach."

See, also, Mark v. Keller, 188 Minn. 1, 246 N. W. 472.

We have held that the setting aside of an award and the granting of a new hearing under M. S. A. 176.60 must be "for cause," and that the commission's determination in this respect is final unless an abuse of discretion clearly appears. Domich v. Oliver I. Min. Co. 172 Minn. 521, 216 N. W. 227; Gustafson v. Ziesmer & Vorlander, Inc. 213 Minn. 253, 6 N. W. (2d) 452; Elsenpeter v. Potvin, 213 Minn. 129, 133, 5 N. W. (2d) 499, 501.

In Bomersine v. Armour & Co. 225 Minn. 157, 30 N. W. (2d) 526, practically the same question was involved as in the instant case. Authorities were there cited and fully discussed. Restatement is not necessary.

Many issues have been raised by relator, some for the first time in this court. The only question before us, as we see it, is whether the commission abused its discretion in denying relator's petition. In our opinion it did not.

Writ discharged.