# DEWEY G. WALLACE v. BERT LEITZEN, *d.b.a.* LEITZEN CONCRETE PRODUCTS, AND ANOTHER.[1]

January 28, 1955.

No. 36,350.

*Plunkett & Plunkett,* for relator.
*Robb, Robb & Van Eps,* for respondents.

CHRISTIANSON, JUSTICE.

Certiorari to review an order of the industrial commission denying relator's petition to vacate an award of the commission dated March 24, 1950, on the ground of mutual mistake and changed conditions unknown and not contemplated by the parties at the time of the award and for a rehearing to determine the extent of relator's disability.

Prior to March 24, 1950, relator and respondents entered into a stipulation for settlement wherein it was recited that relator claimed that he was entitled to compensation for an injury to his right testicle alleged to have been sustained as the result of an

[1]Reported in 68 N. W. (2d) 372.

accident on November 23, 1949, while in the employ of respondent Bert Leitzen, when relator was backing a truck, lost his balance, and was caused to fall. The stipulation further recited that following said date relator suffered a wage loss by reason of alleged inability to work for a period of six weeks; had certain medical care and attention of the reasonable value of $27, which was unpaid; and had expended $7 for drugs and medicine. Respondents, while denying that relator had sustained an accidental injury or that the disability suffered by relator was due thereto, agreed, in compromise, to pay relator the sum of $60 which represented two weeks temporary total disability compensation and to reimburse him in the sum of $7 for his medical expenses. Respondents also agreed to pay the unpaid bill for relator's medical care and attention in the amount of $27 direct to the doctor who rendered the same.

Relator agreed therein to accept these sums as a full and complete settlement of all his claims for disability and medical care and expense, heretofore or hereafter rendered or to be rendered to relator, against his employer and its insurer by reason of the claimed accident. The parties having waived their rights to a formal hearing before the industrial commission, the commission on March 24, 1950, made its award in conformity with said stipulation. The stipulation discloses that relator consulted with a compensation attorney of the commission before making the settlement.

More than three years later, on October 30, 1953, relator petitioned the commission to vacate the award and to obtain a rehearing on the ground that at the time of the settlement he and his employer acted upon a mutual mistake of fact regarding his injury. In addition to the facts set out in the foregoing stipulation, relator stated in the petition that when he slipped and pinched his testicle, he also struck the lower portion of his back on the running board and that thereafter he experienced constant pain in the region of his lumbar spine as well as his testicle. He further stated that on March 28, 1950, his employer's insurer paid him $60 in settlement of his claim for injury to his testicle; that thereafter his back continued to pain him in ever increasing intensity; that on May 1, 1950, he sought medical

attention and a bone graft, L-4 to S-2, was accomplished in an operation on May 8, 1950; and that ever since said accident he has experienced pain in his back. Finally relator stated that at the time of the award he did not know of the true condition of his back and that a bone draft would be required as a result of said back injury; that on October 20, 1953, he was informed by his present attorney that he had a valid claim for compensation benefits against respondents; and that shortly thereafter he authorized his attorney to institute the present proceedings.

The petition was supported by an affidavit of Dr. James R. Doyle to the effect that, based upon his examination of relator and the history of the accident as related to him by relator, it was his opinion that the fall of November 23, 1949, was a direct contributing cause of the operation performed on relator on May 8, 1950, and the disability resulting therefrom. Also, an affidavit by relator supported his petition in the following respects: That when he slipped and fell, he struck his spine on the running board of the truck and pinched his testicle on said running board; that pain persisted in both areas thereafter; that on or about March 28, 1950, he signed a final receipt for compensation in the amount of $60 disability payment and $34 medical payments; and that at said time he did not know the true condition of his back but assumed that the pain therein would go away in the near future.

The petition came on for hearing before the commission on December 1, 1953. Respondents appeared in opposition thereto. With the consent of counsel, the commission thereafter wrote the Mayo Clinic to obtain the history given by relator to the clinic in May 1950. In reply it received a letter from Dr. P. R. Lipscomb dated December 14, 1953, wherein Dr. Lipscomb stated that he had conducted the examination and treatment of relator pertaining to his back; that relator was first seen by the Mayo Clinic's out-call physician on May 1, 1950, at which time he was complaining of low-back pain of four days' duration; that at that time relator stated he had had intermittent low-back pain with sciatic radiation; that relator was referred to the St. Mary's Hospital and the following history was

there obtained: That relator stated he had been well until eight or nine years previously when he fell while carrying a heavy can of milk while employed by the Rochester Dairy; he stated that he struck his back at that time and was in bed with back pain following the fall; and that since that time he had had intermittent bouts of back pain. Relator also said that since April 1950, he had had more severe back pain with intermittent attacks of sciatic pain and that the pain extended into both lower extremities.

Dr. Lipscomb in his letter further stated that when relator was seen on May 1, 1950, a diagnosis was made of probable protruded disk together with narrowing of the lumbosacral interspace; that on May 8, 1950, Dr. Love of the neurosurgical department removed a protruded intervertebral disk from the lumbosacral interspace; and that at the same time Dr. Lipscomb performed a spinal fusion from the fourth lumbar to the sacrum. Finally the letter stated that relator was dismissed from the St. Mary's Hospital to his home on May 20, 1950. On December 24, 1953, the commission entered its order denying said petition.

Thereafter on January 4, 1954, relator filed a second petition and relator's affidavit in support thereof. The statements therein were the same as in the first petition and affidavit filed. However, relator's second petition was supported by an affidavit of one of his fellow employees to the effect that on or about 4 p. m. on November 23, 1949, relator drove up to where he was working and told him that he had slipped on the running board of the truck earlier in the day, injuring his testicles and falling on his back and that as a result of said fall his back had become so stiff he could not get out of the cab without assistance; that thereupon he helped relator out of the cab of his truck and that was the last time relator worked for respondent Leitzen while the affiant was there.

In addition the second petition was supported by an affidavit of Dr. P. R. Lipscomb of the Mayo Clinic to the effect that on May 1, 1950, relator was seen for the first time at the Mayo Clinic for a back condition; that on May 8, 1950, surgery was performed on relator in which a protruded intervertebral disk was removed from the

lumbosacral interspace and a fusion was performed from the fourth lumbar to the sacrum; that relator's hospital history revealed that for the last year prior to May 1, 1950, there had been continuous aching in the lumbar region with intermittent pains of more severe nature; that he complained of losing 20 pounds in the six-month period prior to May 1, 1950; and that he stated that he fell on November 23, 1949, while standing on the running board of a truck. Dr. Lipscomb states "that assuming he struck his back in falling on the running board of the truck on November 23, 1949, it is my opinion that such a fall could have aggravated his back condition or was a contributing cause to the surgery that followed on May 8, 1950."

Respondent Leitzen filed an affidavit in opposition to relator's petition in which he stated that on November 23, 1949, and for several weeks prior thereto, relator reported to work for him in an unnaturally stooped-over position and with a limping unnatural walk; that thereafter when relator made claim that he had suffered an accidental injury on November 23, 1949, and injured his right testicle, he verily believed that said injury pre-existed said date and arose from causes other than that claimed by relator; and that relator made no claim or statement of any kind at any time to him, his agents, or employees, to the effect that he had suffered any sort of injury to his back on said date or at any other time during the term of employment with him.

The second petition came on for hearing before the commission on January 18, 1954, and on February 8, 1954, the commission entered its order denying the same.

On appeal, relator contends that the commission abused its discretion in refusing to vacate the award because the evidence outlined above clearly establishes the discovery of facts not known or contemplated at the time the original award was made, and therefore it was based on a mutual mistake and should be set aside under M. S. A. 176.461,[2] which provides:

[2]M. S. A. 176.461 was enacted in 1953 and supersedes § 176.60 which was repealed by L. 1953, c. 755, § 83. Insofar as here material, no substantial change was made in the pertinent provisions of the prior statute.

"Except where a writ of certiorari has been issued by the supreme court and the matter is still pending in that court or where as a matter of law the determination of the supreme court cannot be subsequently modified, the commission, *for cause,* at any time after an award, upon application of either party and not less than five days written notice to all interested parties, *may* set the award aside and grant a new hearing and thereon determine the matter on its merits * * *." (Italics supplied.)

Ordinarily, the determination of whether there is sufficient cause to justify the vacation of an award rests in the sound discretion of the commission. Guptill v. Conlon Const. Co. 239 Minn. 185, 58 N. W. (2d) 264; Bomersine v. Armour & Co. 225 Minn. 157, 30 N. W. (2d) 526. In the past it has been deemed proper to set aside awards made pursuant to a hearing or stipulation for settlement and grant a rehearing where there was a mutual mistake between the parties at the time of the award as subsequently shown by newly discovered facts in existence but not known at the time of the initial hearing which indicate that the injury is more serious than that upon which the amount of the award was based[3] or which show, contrary to prior medical diagnosis, that the accident was the cause of the injury.[4] Likewise, where unanticipated factors cause a change of condition and vary the degree of disability upon which the initial award of compensation was based, the original award should be set aside and a rehearing granted.[5]

However, in Bomersine v. Armour & Co. 225 Minn. 157, 161, 30 N. W. (2d) 526, 529, this court stated:

"We have frequently held that where a motion to vacate an original award is based upon the subsequent discovery of facts in existence at the time the award was made rather than upon the development of new facts, there is greater reluctance to grant a

---

[3]Sorenson v. La Pompadour, Inc. 187 Minn. 665, 246 N. W. 114; Leland v. St. Olaf Lutheran Church, 213 Minn. 34, 4 N. W. (2d) 769.

[4]Jovanovich v. St. Paul Corrugating Co. 201 Minn. 412, 276 N. W. 741.

[5]Guptill v. Conlon Const. Co. 239 Minn. 185, 58 N. W. (2d) 264; Kirtland v. State Dept. of Health, 209 Minn. 537, 297 N. W. 23.

rehearing or to hold that the commission abused its discretion in denying a motion to vacate."

In the instant case not only was the fact of the back injury in existence at the time of the original settlement and award, but relator knew of it, and relying upon his own judgment regarding its extent and seriousness, omitted to mention it in the negotiations for settlement and for more than three years thereafter to either the commission or the employer whom he now seeks to hold responsible for compensation.[6] In addition, when the evidence of prior injury and disability of the back found in relator's medical history and respondent Leitzen's affidavit is coupled with the inconclusive nature of Dr. Lipscomb's diagnosis which is expressly limited to a statement that if the accident occurred "such a fall could have aggravated his back condition or was a contributing cause to the surgery that followed on May 8, 1950," considerable doubt is cast on the veracity of relator's claims which the commission was entitled to consider in the exercise of its discretion under § 176.461. Upon the showing made we cannot say that the commission abused its discretion in refusing to accept relator's contention of mutual mistake, particularly in view of the fact that he knew of the injury to his back and by his own actions precluded investigation thereof for a period of more than three years after the original award. Moreover, although the extent of his back injury may have changed since the time of the original award, the commission in the exercise of sound discretion could properly deny relator a rehearing to adjust disability compensation since it was relator's own concealment of the injury to his back which caused the amount of compensation awarded him four months after the alleged accident to

---

[6]Doctor Lipscomb's letter of December 14, 1953, stated that in the medical history furnished St. Mary's Hospital relator recited that he fell and injured his back eight or nine years before and that he had intermittent bouts of back pain since that date; that his back pains had increased since April 1950. Further relator's affidavit and that of his fellow employee establish that, at the time of the alleged accident, relator knew that he had injured his back in the fall, and, in fact, his back had become so stiff that he could not get out of the cab of the truck without assistance.

be predicated solely upon the disability resulting from the injury to his testicle in which there has been no change of condition.[7]

We therefore conclude that the industrial commission did not abuse its discretion in denying relator's petition to vacate the award and for a rehearing.

Affirmed.

---

[7]See, Guptill v. Conlon Const. Co. 239 Minn. 185, 188, 58 N. W. (2d) 264, 266; Glassman v. Radtke, 177 Minn. 555, 558, 225 N. W. 889, 890. Thus the instant case is also distinguishable from the two cases relied upon by relator from other jurisdictions. In Ginter v. Westinghouse Elec. & Mfg. Corp. 11 N. J. Super. 338, 78 A. (2d) 403, the employee's additional injury was made known to the employer and she was examined and cross-examined with respect thereto at the earlier hearing. The only question presented in Crabb v. Department of Labor & Industries, 186 Wash. 505, 58 P. (2d) 1025, 105 A. L. R. 964, was the applicability of a one-year statute of limitations to a subsequent claim for compensation because of disability from an additional injury. The court merely held that the one-year statute was not a bar to further proceedings.