## CARL W. NELSON v. C. F. SCULLY CONSTRUCTION COMPANY AND ANOTHER.

90 N. W. (2d) 903.

June 6, 1958—No. 37,446.

*Robb, Robb & Van Eps,* for relators.
*Edward E. Coleman,* for respondent.

KNUTSON, JUSTICE.

Certiorari to the Industrial Commission to review its order vacating a decision awarding compensation based on a stipulation of settlement.

On and prior to October 23, 1953, petitioner was employed by relator C. F. Scully Construction Company on a bridge construction job on Trunk Highway No. 65 about 2½ miles north of Johnsville,

Minnesota. On February 20, 1956, employee and relator, with relator's compensation insurer, entered into a stipulation in which it appears that employee claims to have sustained an injury on or about October 23, 1953, when he was struck on the hip by a clam bucket attached to a drag line. Relator denied that such injury occurred and also claimed that it did not have actual or statutory notice of such injury if it did occur. Based on such stipulation, the Industrial Commission made an award of $105 for 3 weeks' temporary total disability and $26 medical expenses. The order of the commission states, among other things:

"* * * Said payments when made shall constitute a full and final settlement of any and all claims the employe may have against the above named employer and insurer as a result of the alleged personal injury of October 23, 1953, while in the employ of the above named employer."

Prior to entering into this stipulation, employee was represented by Frank Haskell, who was then employed by the Industrial Commission as a compensation attorney. He was examined by Dr. R. H. Larson of Anoka, who reported to Mr. Haskell what he found, and among other things he said in his report:

"* * * Patient states he fell two weeks ago (about 2-15-55) 12 feet in Silo—landing on back and hand, and back has been worse since then."

He was referred by Dr. Larson to physicians at the University of Minnesota Hospital and was there examined by Dr. Leonard F. Peltier, among others. Dr. Peltier reported to Haskell, among other things:

"* * * It is extremely difficult to say whether the condition present at this time in the right hip was a result of the patient's injury or not."

He was later examined by Dr. Carl C. Chatterton of St. Paul, who made a report to the Industrial Commission and among other things said:

"It would be my impression that this man had a marked destruction of the head of the femur and hip joint. * * *

\* \* \* \* \*

"Conclusions: At the present time this man has a destruction of his

hip which has caused atrophy of his muscles, marked limitation of motion of his hip, to such an extent I feel he is unable to do heavy sustained manual labor. * * * it is entirely possible that having a senile hip and receiving an injury advanced the situation materially.

"At the present time I would have to say he has a senile osteoporosis, perhaps made worse by an injury."

In a later report to Mr. Haskell, Dr. Peltier said, among other things:

"* * * the injury which this man incurred when struck by a chain had nothing to do with the advanced degenerative process which is present in the hip."

Dr. Chatterton, in a subsequent report to the Industrial Commission, said:

"* * * we usually feel that these [arthritic conditions] are not due to an injury, but are due to an arthritic process which gradually destroys the hip."

After the award made by the Industrial Commission, employee continued to have trouble, and on April 9, 1957, was examined by Dr. Harry B. Hall of Minneapolis. He reported to relator's insurer on April 12, 1957, and among other things said:

"* * * From the history that the patient gives me, it would be my opinion that the patient's present trouble is a result of an aggravation of an old beginning hip lesion and it has progressed to rather severe hip trouble at the present time."

Employee underwent surgery at the hands of Dr. Hall on May 28, 1957. Thereafter, based largely on his own affidavit and that of Dr. Hall, he petitioned the commission to vacate the award of April 18, 1956, and to grant him a rehearing to determine his rights under the workmen's compensation laws of this state. The affidavit of Dr. Hall contains, among other things, the following statement:

"It is my opinion that the patient's trouble was the result of an aggravation of an old beginning hip lesion and that, while the patient undoubtedly had some previously existing changes in the hip before his injury, the injury of October 23, 1953, did aggravate the condition

and did cause the disability necessitating the operation."

In an opinion attached to its order granting the petition of employee, one of the commissioners said, among other things:

"* * * There is a possibility of an aggravation of this condition through the injury he sustained on said date.

"At the time of the settlement, the parties did not have the information which was developed at the time of surgery."

The only question presented here is whether the commission abused its discretion in vacating the award and granting employee a hearing in this matter.

The governing statute is M. S. A. 176.461, which as far as material reads:

"* * * the commission, for cause, at any time after an award, upon application of either party and not less than five days written notice to all interested parties, may set the award aside and grant a new hearing and thereon determine the matter on its merits and make such findings of fact, conclusions of law, and award or disallowance of compensation or other order as the pleadings and the evidence produced before it and the provisions of this chapter shall in its judgment require."

■ We have frequently held that the determination of whether there is sufficient cause to justify the vacation of an award and the granting of a hearing to an employee is a matter which rests in the sound discretion of the Industrial Commission,[1] and this court will not reverse the commission unless there is a clear abuse of discretion.[2]

■ The commission's power to vacate an order and grant a new

[1]Bomersine v. Armour & Co. 225 Minn. 157, 30 N. W. (2d) 526; Guptill v. Conlon Const. Co. 239 Minn. 185, 58 N. W. (2d) 264; Wallace v. Leitzen, 243 Minn. 481, 68 N. W. (2d) 372; Jovanovich v. St. Paul Corrugating Co. 201 Minn. 412, 276 N. W. 741.

[2]Elsenpeter v. Potvin, 213 Minn. 129, 5 N. W. (2d) 499; Gustafson v. Ziesmer & Vorlander, Inc. 213 Minn. 253, 6 N. W. (2d) 452; Ginsburg v. Byers, 219 Minn. 230, 17 N. W. (2d) 354; Pechavar v. Oliver Iron Min. Co. 198 Minn. 233, 269 N. W. 417.

hearing is effective even though an award is based on a stipulation for final settlement.[3]

■ The commission was of the opinion that additional information may be available as a result of the surgery performed upon employee. While the opinions of the doctors who examined employee prior to the time he signed the stipulation of settlement seem to show a prognosis of the difficulty which finally resulted in the necessity for the eventual surgery, we think that it is entirely possible that some information may now be available from the surgery as to whether the injury suffered by employee, if it can be established, in fact did aggravate the existing arthritic condition which the doctors all found to be present.[4] While we express no opinion on the merits of the controversy, we think that there is a sufficient showing of cause to bring the case within the discretionary power of the commission in setting aside the award and granting a hearing to employee in order that the facts may be developed from the evidence now available as a result of this surgery.

Respondent is allowed $150 attorney's fees.

Affirmed.

---

[3]Guptill v. Conlon Const. Co. 239 Minn. 185, 58 N. W. (2d) 264; Leland v. St. Olaf Lutheran Church, 213 Minn. 34, 4 N. W. (2d) 769; Bomersine v. Armour & Co. 225 Minn. 157, 30 N. W. (2d) 526.

[4]Cf. Jovanovich v. St. Paul Corrugating Co. 201 Minn. 412, 276 N. W. 741.