## JAMES W. ANDERSON v. SANDBERG POULTRY FARM AND OTHERS.

116 N. W. (2d) 585.

August 3, 1962—No. 38,562.

*Rainer L. Weis,* for employee relator.

*Robb, Robb & Van Eps,* for other relators.

*Tyrrell, Jardine, Logan & O'Brien* and *Raymond W. Fitch,* for respondents.

NELSON, JUSTICE.

Certiorari to review an order of the Industrial Commission refusing to vacate an award based on a stipulation of settlement.

Employee, James Anderson, began working for respondent Sandberg Poultry Farm near Granite Falls, Minnesota, on March 1, 1954. He was employed as a laborer doing general farm work. In February 1955, while bending over to pick up a bolt he had dropped, he experienced a sudden pain in his back and found it difficult to straighten up. He consulted a doctor the following day and suffered pain for several days. In April 1955 employee again injured his back when he slipped and fell while carrying cans of feed. He suffered no immediate pain on this occasion but felt the effects the following day. The culminating injury occurred on March 8, 1956, when employee and another employee unloaded 110 sacks of feed by hand. Each sack weighed 100 pounds and had to be taken from a truck and carried to the poultry house. While at home that evening, employee began experiencing soreness in his lower back. He returned to work, however, the following day and did the usual chores. The pain he had experienced the night before continued and grew worse during that and the following days. On March 12 he consulted a chiropractor for treatment but did not get relief. He next consulted Dr. O. M. Odland, a practicing physician in Granite Falls, who determined that he had suffered an acute herniation of the intervertebral disc between the fourth and fifth lumbar vertebrae. He was hospitalized and placed in traction at once, He was discharged from the hospital on March 20, 1956, and was provided with a brace to aid him in adjusting to the injury he had suffered.

Between that date and April 9, 1956, his condition improved and the neurological symptoms which the doctor had found diminished. By April 25, 1956, employee was much improved and on May 1 began to work again, still wearing his back brace. He was advised by his doctor to avoid heavy lifting, stretching, or bending forward, so he obtained less strenuous work. In July, he filed a claim for compensation.

In September 1956, while working for a plumber, employee experienced another onset of back pain, but it was not severe enough

to keep him from working. At this time, Dr. Odland reported to the Industrial Commission that there was a possibility of a recurrence.

Employee's claim for compensation was contested by Sandberg and its insurer on the ground that there was no causal relation between his condition and his employment. At a hearing held November 2, 1956, Dr. Odland was a witness for employee and testified that in his opinion employee was suffering from a herniated intervertebral disc, which limited his ability to do heavy lifting and to bend forward, and had suffered a 5-percent permanent partial disability to his back. After the hearing, Sandberg and its insurer offered to pay employee's medical and hospital bills and workmen's compensation for a 5-percent permanent partial disability of the back for 16.5 weeks, which amounted to $660. Employee accepted the offer as a full and complete settlement of all claims for personal injury sustained March 8, 1956. An award incorporating the agreement pursuant to the parties' stipulation and dismissing the claim petition was filed January 9, 1957. The compensation awarded actually paid employee all benefits he could have received up to the date of hearing except for the period between April 9 and May 1, 1956. His doctor testified that he could have worked during that time. The payments required by the award were made.

Following the award there was little change in the condition of employee's back until he suffered a new injury August 7, 1960, while working for Western Dairy Company. He claims this injury was accidental and caused him further incapacity so that he was forced to discontinue his employment.

On June 8, 1961, employee filed a claim for compensation against Western Dairy and its insurer and against Sandberg and its insurer, asking that the award filed January 9, 1957, be vacated. Employee contends that there was a mutual mistake of fact and that subsequent developments show that the injury on which the award had been based was substantially more severe than had been apparent when the settlement had been approved and the award made.

At the hearing an affidavit by Dr. Odland was presented to the Industrial Commission. It stated:

"The patient, as reported in my file, first consulted me on the 12th

day of March, 1956, at which time he stated that he had been working at the Sandberg Poultry Farm at Granite Falls, Minnesota, on the 8th day of March, 1956, and that he suffered an injury. He first injured his back on February 14, 1955, while working at the same place. He was seen on February 16, 1955, and had X-rays at that time. Diagnosis was para spinal muscle strain and he responded to conservative therapy.

"The patient was seen intermittently throughout the ensuing period. He reported back to our clinic on the 7th day of August, 1960, with acute severe pains. The patient was placed in the hospital and placed in traction and treated conservatively. The patient attempted to work again, but the pain became worse and the findings are consistent with the X-ray findings of intervertebral disk disease at the levels of L4-L5 and L5 and S1, right. The defect on the right (L5-S1) is accompanied by complete loss of nerve root sleeve. He wears a back brace. It is my opinion that the patient suffered in 1956 a definite intervertebral disk injury, made worse or complicated by his most recent injury on the 7th day of August, 1960. It is apparent at this time that the future of this man is held in jeopardy by the condition, and that in all probability he will eventually be subjected to surgery of a corrective nature on his back.

"The patient was employed for a time at Western Dairy in Clarkfield, Minnesota, where he states he would still be employed but for the fact that he could not do the work required because of his back condition. The patient is unable to continue doing heavy work of the kind he was able to do before he was injured. He is anxious to have corrective surgery done at this time in the hope that he will be able to return to full time heavy work.

"It is my opinion that additional medical treatment to whatever extent necessary to improve the patient's condition should be provided at this time."

On July 31, 1961, the commission entered an order refusing to vacate the award on the ground that there was no reasonable basis for doing so. One commissioner dissented. The only question for con-

sideration before this court is whether the Industrial Commission abused its discretion.

 Statutory authority to set aside an award is derived from Minn. St. 176.461, which provides that the commission "for cause, at any time after an award, upon application of either party * * * may set the award aside and grant a new hearing and thereon determine the matter on its merits * * *." Settlement of claims under the Workmen's Compensation Act is governed by § 176.521, which provides:

"Subdivision 1. An agreement between an employee or his dependent and the employer or insurer to settle any claim for compensation under this chapter is valid where it has been executed in writing and signed by the parties, and the commission has approved the settlement and made an award thereon.

"Subd. 2. Except for the amount of compensation, the commission shall approve a settlement only where its terms conform with this chapter.

"The commission shall exercise discretion in approving or disapproving a proposed settlement.

"The parties to the agreement of settlement have the burden of proving that the settlement is reasonable, fair, and in conformity with this chapter.

"Subd. 3. Notwithstanding any provision in the agreement of settlement to the contrary, the commission may set aside an award made upon a settlement, pursuant to this chapter."

This court has held that the Industrial Commission has the power to vacate an award even though the award is based on a stipulation for final settlement. Nelson v. C. F. Scully Const. Co. 252 Minn. 518, 90 N. W. (2d) 903; Dudansky v. L. H. Sault Const. Co. 244 Minn. 369, 70 N. W. (2d) 114; Bomersine v. Armour & Co. 225 Minn. 157, 30 N. W. (2d) 526.

However, whether there is sufficient cause to reopen an award based on a stipulation for final settlement rests in the sound discretion of the Industrial Commission. Dudansky v. L. H. Sault Const. Co. *supra;* Guptill v. Conlon Const. Co. 239 Minn. 185, 58 N. W. (2d) 264; Bomersine v. Armour & Co. *supra.*

Commissioner James Pomush who wrote the majority opinion reviewed the testimony of Dr. Odland as well as the reports of one Dr. McGandy, who examined employee in behalf of Sandberg's insurer, and found that employee was not misled by any expressed diagnoses. He also noted that employee got along fairly well until the additional disability which apparently occurred in August 1960. (Of course, the refusal to vacate the award of January 9, 1957, did not determine whether employee is entitled to compensation against Western Dairy because of such disability.) Regarding the settlement and compromise which the employee has sought to vacate, the majority opinion said:

"* * * The employe, rather than litigating his case when it came up for trial, chose to accept the settlement knowing the material nature of his injury, knowing the material allegations of the employer and insurer, and with no misrepresentation made to him. True, his condition apparently has become worse; but we cannot find merit in saying that in a case of this nature, an employer who enters into a reasonable settlement with all the facts known to everyone and with reasonable knowledge by both parties that the condition may become worse should, after payment, be forced to litigate the very same claim that he has settled. Nor, as the attorney for the Sandberg Poultry Farm stated, should an employer be subjected to having the settlement vacated merely because further aggravation may have taken place with another employer or outside employment."

The general rule as to scope of review of appeals from determinations of administrative boards is applicable here. We have repeatedly said that in reviewing findings of fact of the Industrial Commission the function of the supreme court is not to determine whether on the facts the decision of the commission is correct or even preferable to another but rather only to determine whether it has sufficient basis of inference reasonably to be drawn from the facts. 21 Dunnell, Dig. (3 ed.) § 10426.

Counsel for employee has not shown any precedent to support his position that the previous employer is responsible under the Workmen's Compensation Act for subsequent injuries that aggravate a pre-

existing condition when the parties have stipulated the extent of that employer's liability and there appears no demonstrable mistake of fact. A review of the medical testimony in this case discloses no basis for finding that either party was under any misapprehension as to the nature and seriousness of the injuries covered by the stipulation of settlement and award. It was only when a subsequent injury occurred that employee appears to have had cause to complain. If he is entitled to compensation for that injury against Western Dairy, that may be determined in a proceeding instituted for that purpose.

In determining whether the award involved in this case should be vacated, the Industrial Commission might properly, upon the record before us, refuse to consider any injury which employee may have sustained in subsequent employment. The determination made is limited to the injuries employee sustained while in the employ of his first employer. The record fails to disclose any reasonable basis for disturbing the determination of the Industrial Commission that the award against that employer should not be vacated.

Affirmed.