## HENRY JACOBSON v. UPTOWN TRANSFER & STORAGE COMPANY AND ANOTHER.

129 N. W. (2d) 41.

June 12, 1964—No. 39,184.

*George C. Stetson* and *William D. Howard,* for relator.
*Meagher, Geer, Markham & Anderson, Mary Jeanne Coyne,* and *O. C. Adamson II,* for respondents.

KNUTSON, CHIEF JUSTICE.

Certiorari to review a decision of the Industrial Commission denying relator's petition for an order to vacate a prior decision of the commission and to join the state treasurer, as custodian of the special compensation fund, as a party to these proceedings.

Briefly, the pertinent facts may be stated as follows: On December 25, 1956, relator, Henry Jacobson, returned to Minneapolis after having lived on the west coast most of the time for some 15 or 16 years. During that time he was employed by a number of employers in a variety of types of work. His brother Ben was on the payroll of employer, Uptown Transfer & Storage Company, but it appears from the original record that petitioner had never been on the payroll of this employer. On January 26, 1957, Ben and one Floyd Cornell, who was also an employee of Uptown Transfer & Storage Company, re-

quested that petitioner help them with a moving job. He contends that in helping to move a freezer he slipped and injured his back. On February 5, 1957, he went to see Dr. John Feeney and complained that he had injured his back on January 26. X rays disclosed a compression fracture of the third dorsal or thoracic vertebra and compression of the superior plates of the seventh and eighth dorsal vertebrae. Dr. Feeney saw petitioner regularly from February to September 1957. Petitioner was never hospitalized, nor was a cast or brace prescribed, but he did receive physiotherapy in the form of hot packs, massage, and motion. Dr. Feeney discharged relator on August 1, 1957, with a recommendation that he return to work.

On September 19, 1957, relator filed a claim petition for medical benefits and temporary and partial permanent disability. Prior to the hearing he amended his petition so as to claim total permanent disability. Three doctors testified at the hearing. Dr. Feeney, who had been petitioner's attending physician, testified that in his opinion petitioner had a 15-percent permanent disability of his back. He was of the opinion that petitioner was not totally and permanently disabled. Petitioner also called Dr. Meyer Goldner, who had examined him on September 25, 1957. He was of the opinion that petitioner had a 20-percent permanent disability of the back. Employer called Dr. Edward Evans, who was of the opinion that petitioner had a 15-percent permanent disability of the back but that it was not due to an injury as petitioner claimed. During his examination by all of these physicians, petitioner failed to disclose that he had suffered a prior compensable injury to his back. It was not until the records from the Washington Department of Labor and Industries were produced that it became apparent, and it was finally admitted by petitioner, that he had suffered such a disability to his back on May 3, 1951, while employed in Washington and that a group of doctors who had examined him on December 18, 1951, found a 20-percent permanent disability unspecified. It is enough to say that as a result of this prior injury he was awarded a 30-percent permanent disability and paid $1,500 by the Washington fund.

At the hearing involving the injury of January 26, 1957, the referee

found that petitioner had sustained a 15-percent permanent disability of the back and awarded him $1,980 but deducted $1,500 therefrom because of the amount he had received from the Washington fund. On appeal, the Industrial Commission found petitioner had sustained a 20-percent permanent disability to his back and awarded him the sum of $2,640 without any deduction for the money he had received from the Washington fund. The commission specifically rejected petitioner's claim that he had been permanently totally disabled. No review was sought of the commission's determination.

Three years later, on October 8, 1962, relator petitioned to reopen the proceedings so that he could relitigate his claim of permanent total disability. He also requested the commission to join the state treasurer, as custodian of the special compensation fund, as a party. The petition to reopen was denied on the ground that there was no reasonable basis for vacating the earlier decision. Among other things, the commission stated:

"* * * The proceedings indicate no newly discovered evidence or anything that was not considered previously. Current medical opinions are not different significantly from the medical evidence considered previously by the Commission."

In reaching its decision with respect to the petition for leave to reopen, the commission considered the opinion of Dr. Feeney, the original attending physician for petitioner, who as a result of a reexamination on October 16, 1962, concluded that "this man is disabled at the present time as a result of disease and not as a result of any injury he may have received."

Dr. Goldner, who had testified for petitioner at the original hearing and who reexamined petitioner on February 6, 1961, concluded:

"This osteoporotic condition is chronic and slowly progressive, and will continue to cause Mr. Jacobson considerable difficulty in the future.

"In carefully reviewing the X-ray films taken on September 25, 1957 and May 21, 1958 there is no evidence at that time that any changes in the thoracic 12 and mid lumbar segments is present.

"These progressive changes, therefore, demonstrate the chronicity

and generalized involvement of his particular ailment, and are not necessarily tied up at this time with any specific injury or injuries.

"I would therefore attribute any increase in his permanent disability to the back to the peculiar nature of the condition and not to any specific incident thereafter."

Dr. Richard H. Jones, a member of the clinic of Evans and Reiley, who examined petitioner on October 30, 1962, concluded:

"* * * this patient has probably more disability of his back than he had in 1958, but in my opinion this worsening change is on the basis of progressive degenerative change with osteoporosis or from his basic premature aging change and not as a result of any previous back injuries which his history indicates had occurred."

In support of the petition Dr. John F. Pohl, who examined petitioner on August 27, 1962, stated that it was his conclusion that petitioner had a 60-percent permanent disability of the spine and was unemployable except at light tasks.

The evidence shows that petitioner suffered from osteoporosis, a degenerative bone condition, prior to his injury in 1957.

Our review is of the decision of the Industrial Commission denying relator's petition to reopen.

The statute governing vacation of awards by the Industrial Commission (Minn. St. 176.461), as far as pertinent here, reads:

"* * * the commission, for cause, at any time after an award, upon application of either party * * * may set the award aside and grant a new hearing and thereon determine the matter on its merits and make such findings of fact, conclusions of law, and award or disallowance of compensation or other order as the pleadings and the evidence produced before it and the provisions of this chapter shall in its judgment require."

In considering this statutory provision, several applicable rules have evolved in decisions of this court. "Cause," as used in this section, means "good cause," that is, some such cause as fraud or surprise or some factor unknown at the original determination that would lead to a conclusion that the original award was incorrect. It was not the pur-

pose of the statute to permit repeated litigation of fact issues once determined on competent evidence.

■ The granting of a petition to reopen under this statute rests in the sound discretion of the Industrial Commission.[1] Many of the rules applicable are stated in Elsenpeter v. Potvin, 213 Minn. 129, 132, 5 N. W. (2d) 499, 501, where we said:

"Mason St. 1927, § 4319, [predecessor of § 176.461] permits an award to be set aside and a new hearing to be had only 'for cause.' That means for good cause; that is, some such cause as fraud or surprise so that, in the exercise of sound judicial discretion, the award should be vacated and a new hearing had. * * * It was not the purpose of § 4319 to permit repeated litigation of such issues as are susceptible of best and final decision in the initial hearing, but to permit adjustment of the award in relation to facts subsequently appearing so as 'to assure a compensation proportionate to the degree and duration of disability.' * * *

"* * * Where the petition to vacate is based upon the subsequent discovery rather than the subsequent development of new facts, there is a greater reluctance to grant a rehearing. In such a case the evidence must not be merely cumulative."

The commission's decision is final unless it can be said that there was an abuse of discretion.[2]

In Ogrosky v. Commonwealth Elec. Co. 172 Minn. 46, 47, 214 N. W. 765, 766, we said:

"* * * Whether the rehearing should have been granted rested in

---

[1]Bomersine v. Armour & Co. 225 Minn. 157, 30 N. W. (2d) 526; Batchelder v. Northwestern Hanna Fuel Co. 225 Minn. 250, 30 N. W. (2d) 530; Guptill v. Conlon Const. Co. 239 Minn. 185, 58 N. W. (2d) 264; Wallace v. Leitzen, 243 Minn. 481, 68 N. W. (2d) 372; Dudansky v. L. H. Sault Const. Co. 244 Minn. 369, 70 N. W. (2d) 114; Nelson v. C. F. Scully Const. Co. 252 Minn. 518, 90 N. W. (2d) 903; McGuire v. Viking Tool & Die Co. 258 Minn. 336, 104 N. W. (2d) 519; Anderson v. Sandberg Poultry Farm, 263 Minn. 360, 116 N. W. (2d) 585.

[2]Bomersine v. Armour & Co. 225 Minn. 157, 30 N. W. (2d) 526; Elsenpeter v. Potvin, 213 Minn. 129, 5 N. W. (2d) 499.

the discretion of the commission. * * * The mere fact that we might have decided to the contrary does not mean that there has been an abuse of discretion on the part of the commission. Unless there has been a clear abuse of discretion we cannot disturb the order. In the absence of something to indicate that a discretionary power has been exercised arbitrarily, capriciously, or contrary to legal usage, we are bound by the result. So long as such discretion is exercised judicially the result is beyond our reach. Its exercise depends not upon the application of rules of law but upon personal judgment."

■ Cause sufficient to justify the vacation of an award is defined in Dudansky v. L. H. Sault Const. Co. 244 Minn. 369, 372, 70 N. W. (2d) 114, 116, as follows:

" 'Cause' sufficient to justify the vacation of an award is established where it is demonstrated that subsequent thereto new facts with reference to the injury involved have developed; where it is shown that facts relating to such injury were in existence at the time the award was made but were then unknown * * *; or where an award is made with reference to an injury, the full extent and seriousness of which is not discovered until subsequent thereto."

■ Where the medical evidence is in dispute, it is for the commission to resolve the dispute the same as upon an original hearing.[3]

Where the evidence submitted in support of a petition to reopen is merely cumulative, or was in existence at the time of the original hearing, it is not an abuse of discretion to deny the petition.[4]

■ In this case none of the medical witnesses at the original hearing

---

[3]Rehak v. St. Paul Terminal Warehouse Co. 206 Minn. 96, 288 N. W. 22; Bomersine v. Armour & Co. 225 Minn. 157, 30 N. W. (2d) 526. See, also, Ness v. National Iron Co. 249 Minn. 475, 82 N. W. (2d) 688. (In that case we held that the power to rerefer the claim to the referee prior to a final decision by the commission was similar to the power to reopen a case under this statutory provision and that its exercise was subject to the discretion of the commission.)

[4]Stepan v. J. C. Campbell Co. 228 Minn. 74, 36 N. W. (2d) 401. See, also, Dudansky v. L. H. Sault Const. Co. 244 Minn. 369, 70 N. W. (2d) 114.

testified that petitioner was totally disabled. There was some evidence that he was unemployable because of an unfavorable labor market existing at that time, but no one said that he was totally disabled, and this issue was thoroughly litigated.

Petitioner argues, and we have held, that the term "totally disabled" may encompass a condition where an employee is unable to perform the substantially material parts of some gainful work or occupation with reasonable continuity.[5]

Petitioner contends that he comes within this rule and that the commission, on the initial hearing, failed to apply the correct rules of law. The determination of petitioner's disability at the time of the original hearing is now conclusive unless he can show that some unknown factor is involved or something new has developed that is traceable to his injury and was overlooked at the time of the original hearing. There is no claim of fraud or surprise, nor is there any claim that the medical witnesses at the original hearing did not testify according to their best judgment.

Even if it were admitted that petitioner presently is totally and permanently disabled, it was for the commission to determine whether his present condition is the result of his alleged injury or a progressive degenerative disease, which all doctors admit was present prior to the injury which he sustained in 1957. The medical testimony amply supports a finding that if petitioner is now totally disabled it was due to such disease and not because of any injury. Under these circumstances, there clearly was no abuse of discretion on the part of the commission in denying the petition to reopen.

Affirmed.

---

[5]Lee v. Minneapolis St. Ry. Co. 230 Minn. 315, 41 N. W. (2d) 433; see, Berg v. Sadler, 235 Minn. 214, 50 N. W. (2d) 266.