PAUL DUDANSKY v. L. H. SAULT CONSTRUCTION
COMPANY AND ANOTHER.
VAL BJORNSON, STATE TREASURER, CUSTODIAN
OF COMPENSATION FUND.[1]

April 22, 1955.

No. 36,400.

[1]Reported in 70 N. W. (2d) 114.

*Robins, Davis & Lyons, Hyman H. Cohen, Willard L. Converse,* for relator.

*Reynolds & McLeod* and *Curtis C. Gilmore,* for respondents employer and insurer.

THOMAS GALLAGHER, JUSTICE.

Certiorari to review a determination of the industrial commission denying employee's petition to set aside an award and for a new hearing.

Employee's petition was based upon the claim that as a result of an accident on August 22, 1941, he had become permanently and totally disabled because of a recurrent degenerated disc; that on November 20, 1942, surgery had been undertaken at the Mayo Clinic to correct this condition but without success; that he could not submit to further surgery without an unreasonable risk to his life

because of a heart condition and cerebral history; and that the nature and extent of his disability were unknown at the time of a "final" settlement and award by the commission. His petition was supported by a medical report submitted by Dr. Vernon D. E. Smith.

Respondents contended that relator's present disability was attributed to two conditions, one a result of the accident, and the other a neurological one having no relation thereto. Their answers to such effect were supported by the medical reports of Drs. Harold H. Noran, Wesley H. Burnham, and Walter P. Gardner. In its decision the commission relied upon the medical reports referred to as the basis for its determination. No oral testimony was submitted.

There is no dispute as to the fact that relator suffered a severe injury to his back as a result of the accident of August 22, 1941, at which time he was employed by respondent L. H. Sault Construction Company. Compensation was paid therefor from August 22, 1941, to March 2, 1942, for temporary total disability. On April 27, 1942, he entered into an agreement with respondents by the terms of which he received an additional 30 weeks of compensation. On November 20, 1942, he submitted to surgery at the Mayo Clinic, at which time a small protruded nucleus at the fifth lumber interspace was removed.

Subsequently, on October 7, 1943, the industrial commission reopened its award and thereafter a new settlement was agreed upon. Thereunder, relator was paid an additional $1,100, of which $330 was reimbursement for medical expenses. It was stipulated that this settlement and an award based thereon constituted a full and complete release to all relator's claims for disability. At the time of the accident, there was no statutory provision for permanent disability allowances because of back injury.

Subsequent to this settlement, relator worked at various jobs until the fall of 1951. In the meantime, during 1947, he suffered a condition diagnosed as a coronary disease with possible coronary thrombosis, not related to the accident. In October of 1951, he suffered a cerebral thrombosis or hemorrhage. He has not worked since that time.

On May 12, 1953, he entered Miller Hospital in St. Paul for further studies and evaluation by respondents' physician, Dr. Walter P.

Gardner, because no improvement had occurred in his low-back pain or in his left lower extremity. On that date a spinogram was performed upon him and X rays taken. On May 14, 1953, an electroencephalogram was performed. On May 16, 1953, a disc puncture was undertaken, and a neurological examination was given him on May 21. The results of all the aforesaid were included in Dr. Gardner's report.

It is relator's contention that on the basis of the reports submitted the commission's refusal to reopen the award constituted an abuse of discretion.

■ It is well settled that under M. S. A. 1949, § 176.60,[2] an award of the commission, even though based upon stipulation for final settlement, may be set aside for "cause" and a new hearing granted; and that whether there is sufficient cause to justify the vacation of an award ordinarily rests in the sound discretion of the commission. Guptill v. Conlon Const. Co. 239 Minn. 185, 58 N. W. (2d) 264; Bomersine v. Armour & Co. 225 Minn. 157, 30 N. W. (2d) 526.

■ "Cause" sufficient to justify the vacation of an award is established where it is demonstrated that subsequent thereto new facts with reference to the injury involved have developed; where it is shown that facts relating to such injury were in existence at the time the award was made but were then unknown (Kirtland v. State Dept. of Health, 209 Minn. 537, 297 N. W. 23; Bomersine v. Armour & Co. supra) ; or where an award is made with reference to an injury, the full extent and seriousness of which is not discovered until subsequent thereto. Bomersine v. Armour & Co. supra. Where medical reports submitted upon petition to vacate an award are not in conflict as to such new developments, the refusal to vacate it may constitute an abuse of discretion. Guptill v. Conlon Const. Co. supra; Leland v. St. Olaf Lutheran Church, 213 Minn. 34, 4 N. W. (2d) 769; Kirtland v. State Dept. of Health, supra.

[2]This section was repealed by L. 1953, c. 755, § 83. Section 176.461 with comparable provisions was enacted at that time. Section 176.60 is applicable here by virtue of § 176.641, which provided that liabilities arising prior to repeal of § 176.60 should be governed by existing law.

■ From the foregoing it is clear that there must be a careful analysis of the medical reports submitted here to ascertain whether they establish without dispute that new developments with respect to employee's injuries have substantially increased the disability resulting to him because of the accident. With reference to this issue, such reports may be summarized as follows:

Dr. Vernon Smith reported that relator was suffering from "a recurrent degenerated disc at the level of his previous operative site"; that as a result he was "totally disabled" and that such disability was a "direct sequela" of his old injury; that relator was also suffering from a coronary disease and had sustained one "cerebral accident"; and that surgery to correct the condition resulting from the degenerated disc was not advisable because of relator's general physical condition.

Dr. Walter P. Gardner, who made the most extensive examination for respondents, reported that he found relator suffering from a degenerated disc between the fourth and fifth lumbar vertebrae, producing pain in the back, leg, and hip with an impairment of gait in the left leg; that this condition was in part the cause of relator's disability and was "secondary" to relator's accidental injury. He found relator also suffering from a neurological condition not related to the accident which also was disabling relator and which might progress to a point where it alone would bring about total disability. He made no estimate of the extent of relator's present disability nor did he attempt to demonstrate what portion thereof might be attributable to the accident and what portion to the neurological disorder. He did not recommend surgery, stating that relator should be treated "conservatively" for the orthopedic condition of the back.

Dr. Wesley H. Burnham found that X rays disclosed extensive hypertrophic changes in the relator's lower dorsal region and a complete hemilaminectomy defect of the left side in the lamina of the fourth lumbar vertebra and a narrowing of the intervertebral disc space between the fourth and fifth vertebrae; that relator's lack of control of his left leg "may very well be the result of his previous back disorder"; that relator does not appear completely disabled

from all work, but that it is "rather difficult to make an accurate evaluation of permanent partial disability." He stated further, "I cannot * * * recommend the surgical intervention at this time," and urged examination by a neurologist.

Dr. Harold H. Noran described relator's case as an "interesting" one. He found extreme tenderness to the left of the lower lumbar spine near the old operative scar. He stated: "This case is extremely difficult to evaluate" and suggested hospitalization and further studies to rule out cerebral disease.

It is clear from the foregoing that subsequent to relator's last surgery and because of the accident he has developed a recurrent degenerated disc with accompanying hypertrophic changes, which now causes substantial pain in his lower back and left leg, with limitation of movement in the latter, and which has resulted in substantial, additional disability. The conclusion of Dr. Smith that such developments have resulted in total disability does not find conflict in the other medical reports beyond the suggestion that the full extent of relator's disability is difficult to evaluate, or that he may be suffering concurrent disability from neurological sources independent of the accident.

■ While relator's coronary condition has developed since the accident and may be a contributing factor to his present disability, since it is undisputed that the injuries sustained in the accident are presently the cause of such disability in part at least, the coronary condition should not limit the commission in its authority to vacate the award and conduct further hearings to ascertain the facts with reference to the present situation. We conclude that the medical reports described clearly evidence the establishment of a "cause" sufficient to justify the application of § 176.60 in reopening the award and that the commission erred in failing to do so.

■ Nor would the fact that relator has not submitted to further surgery in an effort to correct his back condition constitute a bar to his right to establish further disability traceable to the accident. It is significant that none of the medical examiners recommended such a course and at least one of them pointed to relator's coronary disease as prohibiting recourse thereto. It is well settled that, where

resort to surgery may be attended with danger, or where the outcome thereof is doubtful, the refusal to submit thereto will not preclude a finding of permanent total disability. Sultan & Chera Corp. v. Fallas (Fla.) 59 So. (2d) 535; United States Coal & Coke Co. v. Lloyd, 305 Ky. 106, 203 S. W. (2d) 47; Borucki v. Eagle Pencil Co. Inc. 281 App. Div. 718, 117 N. Y. S. (2d) 765; Mancini v. Superior Court, 78 R. I. 373, 82 A. (2d) 390.

Relator is allowed $250 attorneys' fees and costs and disbursements herein.

Reversed and remanded for further proceedings in accordance with the opinion.