## MAX WOLD v. DECCA DISTRIBUTING COMPANY AND ANOTHER.

130 N. W. (2d) 585.

September 18, 1964—No. 39,321.

*Max Wold,* pro se, for relator.
*McLeod & Gilmore,* for respondents.

PER CURIAM.

Certiorari to review an order of the Industrial Commission denying relator's petition for an order to vacate a compensation award. The petition to vacate was filed about 12 years subsequent to the original award made December 21, 1951. It is contended that the commission abused its discretion in denying the petition to vacate. Since relator appears without counsel, we have permitted him to present his appeal on the original files of the Industrial Commission and his brief. Under the circumstances, we have carefully examined the original files of the commission relating to the matter.

It appears that in March 1951 relator was engaged in manual labor unloading a shipment of 300 phonograph machines, weighing 25 to 30 pounds apiece. He worked with others in a line in which the machines

were moved in a relay system, being handed from one man to the next. Relator alleges that toward the end of this operation a wave of dizziness swept over him from his feet to his head. He completed the job and did not report his condition to the employer at that time. Shortly thereafter he consulted his doctor who advised him to restrict himself to light work. However, he continued his employment for 4 months thereafter. In November 1951 relator submitted a workmen's compensation claim, and in December a settlement was agreed upon whereby he was paid 8 weeks' compensation and certain medical expenses totaling $220.80. At that time he consulted with an attorney for the Industrial Commission. The settlement was approved by the commission on December 21, 1951. In addition to the incident of March 1951, the settlement agreement refers to a prior incident of January 1951, at which time relator had suffered pain in his left chest while lifting a 50-pound box. Respondent denies that relator suffered an accident in the course of his employment or that any disability he might have is related to his employment.

Three medical reports were before the commission at the time of the settlement. The report of relator's doctor is to the effect that he experienced "fatigue and a tingling and burning sensation in the arms, in addition to giddiness, after physical exertion," and states the opinion that relator was capable only of light work. This doctor, who had been acquainted with relator for many years, stated that the disability and his condition was the result of the accident of March 1951. It is uncontroverted, however, that relator had previously suffered from migraine headaches, for which he was exempted from military service. He concedes that he had an earlier history of dizziness but argues that the event of March 1951 aggravated a preexisting condition. There were two other medical reports filed in 1951. One, from a physician who examined relator after the incident of January 1951 but before the incident of March 1951, diagnosed his condition as "Tenderness of intercostal muscles, left side compatible with muscular strain." The other, from a neurologist, was negative. It reported that the examiner sought to give relator, at his request, an electroencephalogram examination to determine whether he had suffered a brain hemorrhage. How-

ever, when the electrodes were placed on relator's head, he refused to continue with the examination, expressing the fear that the doctors or the electroencephalographic equipment were going to take something out of his head. The report of this examination concluded, "I could find no evidence of any organic disease and no evidence of any injury. His symptoms are those of a psychoneurosis, but in this case there is no evidence that he had any physical injury."

The compensation attorney who reviewed the matter prior to the commission's approval of the settlement reported that the relator was advised of his rights to a hearing but preferred to make a settlement. On July 7, 1952, relator again requested of the Industrial Commission a hearing on his claim. He was advised to file a petition to reopen the matter and to consult an attorney. He took no further action until 1963.

On August 8, 1963, relator filed his petition to vacate the award on the ground that he had suffered permanent disability and that the stipulated award was not commensurate with damages sustained. Relator asserted that he had suffered a stroke on the job and now suffers from weakness in the left hand and inability to perform sustained work without severe weakness and giddiness. Relator cited a letter from Dr. Kendall B. Corbin, senior consultant of the Neurology Department of the Mayo Clinic, to the effect that it is possible for a stroke to occur in the "silent area" of the brain which cannot be detected by neurological examination. Relator requested $350 to cover the costs of an examination at the Mayo Clinic.

The only new medical evidence, since 1951, is a report of Dr. David M. Craig, based on two examinations of relator in November and December 1962. Dr. Craig concluded as follows:

"* * * The complaints which he has and the present findings do not suggest any form of neurological involvement. Unless the history of previous examinations reveal other facts, I could find no evidence of any physical impairment as a result of his activities in 1951. There is no evidence at the present time of any physical disability which would render him unable to carry out normal occupational duties. I

feel that his present symptoms and disability are a result of his inadequate and psychopathic personality."

In a supplemental letter Dr. Craig said it was improbable that any neurological injury had occurred which would not be revealed by examination.

Relator here asserts that he sustained a "stroke" as a result of the so-called accident of March 1951, and that he continues to suffer from it to this day. He asserts that the Industrial Commission abused its discretion in refusing to vacate the award. There is no medical evidence in the record supporting relator's assertion that he suffered a "stroke" or brain damage at the time of the alleged accident. This allegation rests on relator's own unsupported assertion.

Under the provisions of Minn. St. 176.461 the Industrial Commission may set aside an award for cause. It provides:

"Except where a writ of certiorari has been issued by the supreme court and the matter is still pending in that court or where as a matter of law the determination of the supreme court cannot be subsequently modified, the commission, for cause, at any time after an award, upon application of either party and not less than five days written notice to all interested parties, may set the award aside and grant a new hearing and thereon determine the matter on its merits and make such findings of fact, conclusions of law, and award or disallowance of compensation or other order as the pleadings and the evidence produced before it and the provisions of this chapter shall in its judgment require."

It is well established that whether there is sufficient cause to vacate a final settlement in a workmen's compensation case ordinarily rests in the sound discretion of the commission. Anderson v. Sandberg Poultry Farm, 263 Minn. 360, 116 N. W. (2d) 585; McGuire v. Viking Tool & Die Co. 258 Minn. 336, 104 N. W. (2d) 519; Dudansky v. L. H. Sault Const. Co. 244 Minn. 369, 70 N. W. (2d) 114; Wallace v. Leitzen, 243 Minn. 481, 68 N. W. (2d) 372; Guptill v. Conlon Const. Co. 239 Minn. 185, 58 N. W. (2d) 264; Bomersine v. Armour & Co. 225 Minn. 157, 30 N. W. (2d) 526.

In support of his claim that the commission abused its discretion, relator relies on Guptill v. Conlon Const. Co. *supra*. In that case the employer denied that there had been an accidental injury. Later, cancer developed in the hip, necessitating a left hindquarter amputation. Employee's petition to vacate the award was supported by an uncontroverted affidavit by his physician to the effect that the cancer had developed from the injury and that it was not manifest at the time of the settlement. The court, although recognizing that vacation of an award ordinarily rests in the sound discretion of the commission, found an abuse of discretion. The court said (239 Minn. 188, 58 N. W. [2d] 266):

"* * * The purpose of this section is to assure an injured employee the opportunity of establishing his right to receive compensation in some measure proportionate to the degree and duration of his disability, particularly when the award sought to be vacated is based upon a mutual mistake as to the facts with reference to the extent of the injuries and disability sustained."

The court went on to say (239 Minn. 189, 58 N. W. [2d] 267):

"* * * we have frequently held that when the new evidence discovered is undisputed and indicates that the employee has suffered substantial additional disabilities following the award, it is an abuse of discretion on the part of the commission not to vacate the prior award."

See, also, Dudansky v. L. H. Sault Const. Co. *supra*.

However, where the facts as to the nature of the injury, including possibilities of future aggravation thereof, were known to the employee at the time of the original award, there is no abuse of discretion in refusing to vacate the award. Anderson v. Sandberg Poultry Farm, *supra*; Wallace v. Leitzen, *supra*; Bomersine v. Armour & Co. *supra*. Nor does the opinion of additional doctors in support of the employee's position compel vacation of an award when no new facts have been discovered. Ness v. National Iron Co. 249 Minn. 475, 82 N. W. (2d) 688. The same is, of course, true when conflicting medical opinions are submitted on a motion to vacate an award. Bomersine v. Armour & Co. *supra*.

In the present case the Industrial Commission was well within the area of its discretion in denying the petition to vacate the award. In the first place, it does not appear that any new facts have developed or been discovered since the settlement was approved. Relator contends he suffered a stroke, with resulting susceptibility to giddiness and fatigue, and weakness in his left arm. In 1951 at the time of the original award relator was already of the opinion that he had suffered a stroke and had expressed this belief to Dr. H. B. Hannah, a neurologist to whom he had been referred, and he also complained of giddiness and tingling and burning in his hands. He had also reported these same symptoms, as well as extreme fatigue, to Dr. Alexander Josewich, his personal physician from the time of his injury until 1960.

It should be further noted that there is not only an absence of uncontroverted new evidence in favor of relator's position, but that the only new evidence is to the contrary. Dr. Corbin's letter suggesting that a stroke could occur in a "silent area" of the brain can be of no evidentiary value in support of the claim that relator actually suffered a stroke. Dr. Corbin never examined relator. The only new medical testimony available is to the effect that relator suffers no physical disability, and that his disability is of psychological origin.

Relator also asserts that the Industrial Commission abused its discretion in approving the settlement in the first place. Approval of settlements was governed by Minn. St. 1949, § 176.69 (since replaced by Minn. St. 176.521):

"An employee or dependent may by a stipulation or agreement settle a claim for compensation with the employer or his insurer, but no such settlement shall be of any force or validity whatsoever until such settlement has been reduced to writing, signed by the parties, approved by the industrial commission, and an award has been made thereon by the commission. All awards pursuant to such settlement shall be subject to reopening in accordance with section 176.60, notwithstanding any statement or agreement to the contrary, which may be contained in any such settlement. Such settlement shall be approved by the industrial commission only where the terms thereof, except as to the amount, conform to the compensation act.

"The matter of the approving or disapproving proposed settlements shall rest in the discretion of the commission and the burden of showing that any proposed settlement is fair, reasonable, and in conformity with this chapter, except as to the amount, shall be on the parties."

It does not appear that there is any possible ground for finding abuse in refusing to vacate the original settlement. All parties were agreed on the settlement; and it is likely, on the basis of the material then before the commission as well as that added since, that relator would have received no award at all if the matter had gone to a hearing.

Affirmed.