FAYETTA V. TURNER v. FEDERAL RESERVE
BANK OF MINNEAPOLIS AND ANOTHER.

213 N. W. 2d 414.

December 14, 1973—No. 43750.

*Mordaunt, Walstad, Cousineau & McGuire* and *Robert J. McGuire,* for relators.

*Feinberg, Mirviss, Meyers, Schumacher & Malmon* and *James J. Schumacher,* for respondent.

Heard before Knutson, C. J., and Otis, Todd, and MacLaughlin, JJ., and considered en banc.

PER CURIAM.

This matter is before the court to review an order of the Workmen's Compensation Commission vacating an award made August 2, 1968, arising out of an injury sustained by respondent, Fayetta Turner, on September 25, 1964. The issue of whether the employee has made a prima facie showing that she had suffered "substantial additional disability" is close, and this court is divided on the question. However, a majority is of the opinion that respondent has sustained her burden and we therefore affirm.

The injury out of which this litigation arose occurred in 1964 when respondent was pushing a rack, loaded with trays of checks, which went out of control as she rounded a corner in the bank where she was employed. In reaching out to swing the rack around, she experienced pain in her low back, her right leg, the back of her neck, and top of her head. However, she completed her day's work and, although she talked to a doctor the next day, she did not see him until 3 days thereafter. Thereupon, she was absent from work for 3 weeks, worked for 3 or 4 days, and took a 2-week vacation. Upon returning, she continued her employment until December 6, 1964, when she was hospitalized until April 10, 1965. Dr. Leonard Titrud performed a left lumbosacral hemilaminectomy to remove an intervertebral disc protrusion on December 9, 1964.

The employee's medical history dates back to 1952 when a tumor on the peroneal nerve of her left leg was removed, resulting in some weakness to her foot and leg. In 1953, she was hospitalized for a nervous condition, and again in 1955 for depression and symptoms of schizophrenia. She was treated in 1959 at Minneapolis General Hospital for back trouble.

In her petition for disability benefits, the employee alleged

she had a "permanent total" disability for which she sought compensation. The referee on December 20, 1965, found that the employee had been temporarily totally disabled since September 28, 1964, except for a period of 3 weeks. On appeal to the commission, the matter was remanded to obtain the testimony of Dr. Titrud. Following that hearing, the referee found the employee was temporarily totally disabled up to June 6, 1967 (the date of the hearing), would require further medical care, and had sustained a 20-percent permanent partial loss of the use of her back. The matter was again appealed to the commission which, on August 2, 1968, unanimously held that the employee's personal injury resulted in temporary total disability only up to June 14, 1965, and that she would not require further medical care as a result of that injury. In an accompanying opinion, the commission supported its decision by reference to Dr. Titrud's report of June 14, 1965, in which he stated:

"I do believe she could return to her work so far as her back is concerned, but that persistent bending, twisting or lifting would be medically undesirable for her in view of her lumbosacral disc trouble. * * * This, then, constitutes the length of disability so far as I can determine."

The commission went on to hold:

"The doctor's opinion as set forth in his reports of February 16th and June 14, 1965, should be given great weight. The reasons, if any, for the doctor's change in opinion from those reports to the time when he testified is not apparent. In absence of any explanation or of any apparent change in the employee's back condition, we find that the employee's temporary total disability attributable to the employee's personal injury of September 25, 1964, ceased on June 14, 1965. (We have also considered the other medical opinions in reaching this determination)."

No appeal was taken by the employee from that adjudication.

Thereafter, employee in December 1968 petitioned the commission to vacate its decision of August 2, 1968. Again, she al-

leged permanent and total disability, alleging that that claim had not been previously adjudicated. On April 23, 1969, that petition was denied by a unanimous commission, and no appeal was taken from that decision. The commission accompanied its decision with the following memorandum:

"The Commission is of the opinion that Workmen's Compensation Rule 16, pertaining to petitions to vacate awards has not been complied with satisfactorily. It should also be pointed out that an award made on appeal in a contested case will not lightly be vacated. A claim petition alleging permanent total disability was filed by the employee on October 7, 1968, and a motion to dismiss the claim petition has been filed by the employer-insurer.

"The employee filed a claim petition on July 27, 1966, alleging *inter alia* permanent total disability as a result of her injury of September 25, 1964. On September 26, 1967, the Referee found that the employee had sustained a 20% permanent partial disability to her back and awarded continuing temporary total disability benefits to date of the hearing. On appeal, the Commission affirmed the award of permanent partial disability and limited the award of temporary total disability benefits to 34 weeks. The reasons for modifying the temporary total disability benefits are set forth in an analysis of the medical reports and testimony on page 3 of the Commission opinion on appeal. We will not review in detail that analysis, except to say that the issue of permanent total disability was placed in issue by the employee's original claim petition of September 27, 1966 but was in the opinion of the Commission, not supported by the evidence. The motion to dismiss the second claim petition of October 7, 1968, is granted."

On June 22, 1971, the employee again petitioned the commission to vacate its award of August 2, 1968. Again, she alleges that she is permanently and totally disabled and now suffers a 35-percent permanent partial disability to her back. The commission granted her petition on March 9, 1972, "in the interests of justice from the new documentary evidence submitted." It is that

order which is here for review. Although it gave no other reasons for vacating the award, at the request of the relators it thereafter filed a new order as follows:

"Motion for more Specific Findings filed April 4, 1972 by the employer and insurer came on to be heard before the Commission on April 10, 1972, pursuant to due notice. * * *

"WHEREAS the Commission on March 13, 1972 issued an order vacating the award filed August 2, 1968; and

"WHEREAS the employer and insurer made a motion for more specific findings be set forth in said order;

"NOW, THEREFORE, IT IS HEREBY ORDERED that the order of the Commission filed March 13, 1972 be and the same is vacated and the Commission renders the following order:

"WHEREAS the employee on June 23, 1971 filed a petition to vacate the award of Commission filed August 2, 1968; and

"WHEREAS the employee has submitted documents intended to show that she has been unemployable since her accident of September 15, 1964 and the resultant back surgery; and

"WHEREAS the medical reports of Dr. Titrud filed as supporting documents indicate that the employee's back condition has worsened since the last consideration of this matter; and

"WHEREAS the medical reports of Dr. Titrud and Dr. Luckey indicate the employee has had increased depression, anxiety, and has suffered a possible conversion reaction to her back injury which has disabled her; and

"WHEREAS it appears from the medical reports submitted that the employee has incurred considerable medical expense since the last consideration of this matter which may be related to her back condition; and

"WHEREAS it appears that it is in the interests of justice from the new documentary evidence submitted that the employee should be allowed her day in court to litigate her claim for continuing disability;

"NOW, THEREFORE, IT IS HEREBY ORDERED that the award of

the Commission filed August 2, 1968 is hereby vacated and said employee is authorized to have her further claim litigated."

In the supporting medical reports, a psychiatrist states that she has a "hysteroid personality" and will not submit to psychiatric treatment which she needs. The psychiatrist concluded: "I do not see her as being gainfully employable due to the physical pain and discomfort she suffers."

In one of his reports, Dr. Titrud stated in summary that the employee has been unable to return to gainful employment and needs "hospitalization for the purpose of rehabilitation care and during that time, should be investigated from a psychiatric angle and proper treatment carried out as indicated." In a subsequent report, he gave an opinion that the employee now suffered "a 35% partial permanent disability in the lumbo-sacral back region because of her intervertebral disc progressive problem." He concluded that he believed she is totally disabled from engaging in work, "particularly in types of work which would require very much standing, bending, back twisting, or any lifting activity."

The statute which then governed the right to set aside compensation awards, Minn. St. 1971, § 176.461, provides:

"* * * [T]he commission, for cause, at any time after an award within eight years from the date compensation was last paid, upon application of either party and not less than five days after written notice to all interested parties, may set the award aside and grant a new hearing and thereon determine the matter on its merits and make such findings of fact, conclusions of law, and award or disallowance of compensation or other order as the pleadings and the evidence produced before it and the provisions of this chapter shall in its judgment require."[1]

We have construed and applied this and prior statutes in a number of cases. Elsenpeter v. Potvin, 213 Minn. 129, 5 N. W. 2d 499 (1942); Bomersine v. Armour & Co. 225 Minn. 157, 30 N. W.

---

[1] This statute was amended by L. 1973, c. 388, § 120, but not in any areas pertinent to the issues in this case.

2d 526 (1947); Dudansky v. L. H. Sault Const. Co. 244 Minn. 369, 70 N. W. 2d 114 (1955); Jacobson v. Uptown Transfer & Storage Co. 268 Minn. 336, 129 N. W. 2d 41 (1964); Jones v. Flour City Ornamental Iron Works, 271 Minn. 42, 134 N. W. 2d 586 (1965); Mattson v. Abate, 279 Minn. 287, 156 N. W. 2d 738 (1968); Radzak v. Mercy Hospital, 291 Minn. 189, 190 N. W. 2d 86 (1971); and Walker v. Midwest Foods, 293 Minn. 460, 197 N. W. 2d 430 (1972).

In Elsenpeter, we held that the word "cause," as used in the statute, means good cause such as fraud or surprise and that it was not the purpose of the statute "to permit repeated litigation of such issues as are susceptible of best and final decision in the initial hearing." 213 Minn. 132, 5 N. W. 2d 501. The commission should be particularly reluctant to grant a rehearing or set aside an award on the basis of newly discovered evidence which was in existence at the time the order was entered. Bomersine v. Armour & Co. *supra.* Only where there is substantial additional disability which has occurred since the award was made is the commission justified in setting it aside. See, Dudansky v. L. H. Sault Const. Co. *supra.* In Jacobson, we stressed the fact the statute does not "permit repeated litigation of fact issues once determined on competent evidence." There, we went on to say (268 Minn. 343, 129 N. W. 2d 45):

"* * * The determination of petitioner's disability at the time of the original hearing is now conclusive unless he can show that some unknown factor is involved or something new has developed that is traceable to his injury and was overlooked at the time of the original hearing. There is no claim of fraud or surprise, nor is there any claim that the medical witnesses at the original hearing did not testify according to their best judgment."

As we have often stated, in light of the humanitarian and remedial purposes of the law, the commission has broad discretion to set aside awards where justice requires it. While compensation decisions do not enjoy the same finality as ordinary judgments, the parties are entitled to have their litigation laid to rest

with some assurance of finality if there has been an opportunity to fully explore the issues and no substantial change has occurred since the time of the award. It is the opinion of a majority of the court that in the instant case the commission was justified in setting aside its prior decision rendered on August 2, 1968.

Dr. Titrud on June 11, 1971, expressed the opinion that respondent "is a very likely candidate for lumbosacral laminectomy. She has had other complaints, such as neck pain and stiffness, also, but this does not seem to be so especially prominent difficulty as the persisting low back trouble." The question of permanent total disability may not have been thoroughly litigated in the first two hearings. We do not now, of course, pass on the issue of whether respondent is entitled to benefits for permanent total disability. The only question before us is whether the commission abused its discretion in granting her another hearing. We hold that it did not.

Respondent is allowed $350 attorneys' fees.

Affirmed.