**James K. FRANKE, Relator,**

v.

**FABCON, INC. and CNA Insurance Company, Respondents.**

No. C3–93–1577.

Supreme Court of Minnesota.

Dec. 17, 1993.

**374**

Law Offices of Thomas J. Christenson, Karen R. Swanson, Minneapolis, for respondents.

Diane Jolicoeur, Minneapolis, for relator.

SIMONETT, Justice.

The employee's petition to vacate an award on stipulation based on change in medical condition was denied by the Workers' Compensation Court of Appeals. We reverse and remand.

On May 26, 1978, James K. Franke was involved in a work-related motor vehicle accident while employed as a construction worker for Fabcon, Inc., which was then insured for workers' compensation liability by CNA Insurance Company. Franke sustained multiple injuries, including a severe hip fracture. The fracture required surgery and 12 weeks of traction. In March 1979 Franke returned to work, eventually resuming his pre-injury duties.

Franke continued to have left hip discomfort, and in April 1980 his doctor felt there was a probable roughening of the cartilage in the hip joint, so that "as years pass, it may well be that the patient will require either a resurfacing procedure or a total joint replacement." The doctor gave the employee a 15% permanent partial disability rating of the left lower extremity. Neither the attending doctor nor consulting doctors felt surgery was then indicated.

In August 1981, Franke sought chiropractic care for a gradual and progressive onset of low back pain which the chiropractor ultimately attributed to an altered gait due to Franke's "deteriorating left hip." On December 25, 1981, Franke's left hip condition was aggravated in a nonwork-related automobile accident; following a week of conservative, in-patient care, the hip pain subsided, but when the physician authorized a return to work, he noted Franke had severe arthritis in his left hip. About a year later, on March 8, 1982, Franke aggravated the discomfort in his low back and left leg while shoveling at work. His chiropractor recommended he discontinue working for a time. Shortly thereafter he was laid off for lack of work. Three months later, Franke was seen by a doctor for evaluation of any residual injuries sustained in the December 1981 nonwork-related auto accident. The doctor reported employee had "traumatic degenerative joint disease of the left hip."

On December 3, 1982, Franke filed a claim petition for temporary total disability benefits after March 8, 1982, based on "traumatic degenerative joint disease" as a result of the 1978 work-related accident and an aggravation of this injury consisting of back and neck strain occurring up to and on March 8, 1982. In April 1986, Franke amended his petition to add a claim for permanent partial disability benefits based on his chiropractor's rating of 15% disability of the back.

At the request of the compensation carrier, Franke was examined by Dr. David R. Johnson in January 1984 and again in May 1986. Dr. Johnson reported Franke still complained of intermittent and variable low back and left hip pain; that there was restriction of motion of the left hip, but that there was no change in the left hip condition since 1984; and that other than monthly chiropractic care for the low back, Franke had received no treatment for these conditions and he felt his low back and left hip conditions were stable. Dr. Johnson rated the back disability at 10%.

This, then, was the medical situation as of June 18, 1986, when Franke and the employer-insurer (Fabcon–CNA), both represented by counsel, negotiated a settlement for $15,000 (less attorney fees). This sum represented $9,000 in permanent partial disability benefits for the low back injury, plus $6,000 in temporary total disability compensation. The settlement agreement stated that the lump sum payment "represents a full, final and complete settlement of any and all workers compensation claims of any kind, except medical expenses, Employee may have, past, present or future, against the Employer and Insurer, as a result of the May 26, 1978

motor vehicle injuries and the alleged March 8, 1982 back injury." [1] On July 1, 1986, the compensation judge approved the settlement and issued an award on stipulation.

About a year and a half after the settlement, Franke took up janitorial work, and then in 1989 began work for Dayton–Hudson Corporation delivering furniture and appliances to Dayton customers. In early 1990, the left hip problems increased and Franke was seen in a hospital emergency room where the diagnosis was severe traumatic degenerative arthritis. On June 2, 1990, Franke aggravated his left hip while making an appliance delivery and he has not worked since. A medical consultant for Dayton's attributed employee's disability to the 1978 injury and not the June 2, 1990 injury. [2] The doctor for Fabcon–CNA said the 1990 injury worsened the prior hip injury and that a total hip replacement was necessary (assuming Franke could get his weight down). The doctor felt Franke had a disability of 55%, 90% of which could be apportioned to the 1978 injury.

This brings us to the current proceedings. In April 1993, Franke filed a petition to vacate the 1986 award on stipulation on the grounds of substantial change in medical condition. The Workers' Compensation Court of Appeals denied the petition, concluding that, while it "cannot be seriously disputed" that the employee's condition had substantially worsened since the 1986 settlement stipulation almost 7 years earlier, Franke had failed to show that this worsening of his medical condition could not reasonably have been anticipated at the time of the settlement. In arriving at this decision, the court applied the definition of "cause" required to vacate an

1. The settlement stipulation recited that Franke had received "multiple injuries, including injury to the back" in the 1978 motor vehicle accident and that Franke had been receiving benefits, including compensation for a "15% permanent partial disability to the left leg." The agreement stated Franke claimed an additional *Gillette*-type back injury culminating in disability on March 8, 1982, and that as a result of the 1978 and 1982 injuries Franke had been temporarily totally disabled from April 20, 1982, and that he had a 15% permanent partial disability of the back. The agreement also stated that Fabcon–CNA denied any *Gillette* injury, claimed Franke's unemployment was unrelated to any compensable injuries,

and contended that any compensable back injury resulted in no more than 5% disability.

The settlement stipulation noted that the parties were entering into the agreement to "settle their differences," and that the employee had been fully advised by his attorney of his rights under the workers' compensation law.

2. Franke has received wage loss benefits from Dayton's for the June 1990 incident pursuant to Minn.Stat. § 176.191 (1990), and he has also been on social security disability since December 1990.

award contained in the 1992 amendments to Minn.Stat. § 176.461, as amended by Act of April 14, 1992, ch. 510, art. 2, § 11, 1992 Minn.Laws 603.

Prior to 1992, section 176.461 provided that an award could be vacated "for cause," and our case law had identified four grounds which could constitute "cause," namely, (a) fraud, (b) mistake, (c) newly discovered evidence, and (d) substantial change in the employee's condition. *See, e.g., Krebsbach v. Lake Lillian Co-op. Creamery Ass'n,* 350 N.W.2d 349, 353 (Minn.1984), (and cases therein cited). As amended in 1992, the section now sets out that "for cause" is limited to: "(1) a mutual mistake of fact; (2) newly discovered evidence; (3) fraud; or (4) a substantial change in medical condition since the time of the award that was clearly not anticipated and could not reasonably have been anticipated at the time of the award." While the legislative history of the amendment indicates it was intended to be simply a codification of prior case law,[3] it appears, at least with regard to a change in medical condition, that there has been a substantive change in the law.

The issues before us, then, are what kind of change of condition is required "for cause," and was there "cause" in this case.

## I.

It is important, first of all, to remember that a workers' compensation claim is not like a private personal injury tort action. In the latter instance, settlements are, in a literal sense, "final and complete," putting to rest, once and for all, a dispute between the parties (absent fraud or mutual mistake). Workers' compensation, on the other hand, is social legislation, providing a measure of security to workers injured on the job, with the burden of that expense considered a proportionate part of the expense of production. *Jones v. Schiek's Cafe,* 277 Minn. 273, 277, 152 N.W.2d 356, 358–59 (1967). The system endeavors fairly and fully to compensate the meritorious injury claim. Consequently, the

Workers' Compensation Act "permit[s] adjustment of the award in relation to facts subsequently appearing so as 'to assure a compensation proportionate to the degree and duration of disability.'" *Elsenpeter v. Potvin,* 213 Minn. 129, 132, 5 N.W.2d 499, 501 (1942) (quoting prior cases).

Generally speaking, therefore, a reopening provision "is a recognition of the obvious fact that, no matter how competent a commission's diagnosis of the claimant's condition and earning prospects at the time of hearing may be, that condition may later change markedly for the worse, or may improve, or may even clear up altogether. Under the typical award in the form of periodic payments during a specified maximum period or during disability, the objectives of the legislation are best accomplished if the commission can increase, decrease, revive, or terminate payments to correspond to a claimant's changed condition." 3 Arthur Larson, *The Law of Workmen's Compensation,* § 81.10 (1993). In other words, to reopen there must be a "change, for better or worse, in claimant's physical condition." *Id.* at § 81.31(a).

Generally speaking, a settlement agreement is understood to cover, compromise and settle the conflicting claims of the parties as of the time of the settlement. Later, if one of the parties seeks to reopen on grounds of a subsequent change-of-condition, the Workers' Compensation Court of Appeals has broad discretion on whether to grant relief, keeping in mind that it is not the purpose of reopening "to permit repeated litigation of such issues as are susceptible of best and final decision in the initial hearing." *Turner v. Federal Reserve Bank of Mpls.,* 298 Minn. 161, 167, 213 N.W.2d 414, 418 (1973), quoting *Elsenpeter, supra.* While our cases have spoken on occasion of known or unknown future consequences of an injury or disability, usually this has been dicta or has occurred in an overlapping discussion of the separate grounds of mutual mistake. *See, e.g., Wallace v. Leitzen,* 243 Minn. 481, 486, 68 N.W.2d 372, 375 (1955) ("where unantic-

---

**3.** *See* Hearing on S.F. 1879, Senate Employment Committee, March 4, 1992 (audio tape) (comments of John Fuller, Senate Counsel and WCCA Judge Rieke) and Senate Judiciary Committee, March 25, 1992 (audio tape) (comments of John Fuller in response to questions from Senator Ranum).

ipated factors cause a change of condition"). But, for change-of-condition, the focus of our cases has been on whether the change has been substantial or significant (and if there is causation). *See. e.g., Turner v. Federal Reserve Bank of Mpls., supra* ("Only where there is substantial additional disability which has occurred since the award was made is the commission justified in setting it aside."); *Wollschlager v. Standard Const. Co.,* 300 Minn. 550, 551, 220 N.W.2d 346 (1974) ("employee's condition had deteriorated substantially"); *Bennett v. Hoiseth Motor Sales,* 302 Minn. 534, 536, 224 N.W.2d 148, 149 (1974) ("symptoms have worsened and increased and also show a significant increase in his disability"). Recently, in *Stewart v. Rahr Malting Co.,* 435 N.W.2d 538, 540 (Minn.1989), we reversed the vacation of an award (and then remanded) because new medical reports appeared to show only a revised difference of opinion on the extent of disability that existed at the time of the settlement, and not a deterioration of the employee's condition subsequent to the award.

■ In short, under pre–1992 case law, the inquiry in a change-of-condition case was restricted to the extent of improvement or worsening of the injury on which the original award was based. This inquiry "looked back" on events, *i.e.,* it compared the employee's *condition* as it was at the time of the petition to vacate with what the *condition* had been at the time of the settlement, unlike a mutual mistake case where the inquiry focuses on what the situation was and what was known about it at the time of settlement. Interestingly, in petitions to discontinue benefits, a substantial change of condition enabling the employee to work again is considered a proper ground for relief.

■ It seems to us fairly evident, then, that the 1992 amendments have modified the change-of-condition grounds for reopening awards. The case law requiring a showing

that "evidence of subsequent developments exists which will establish that [the employee's] condition has substantially worsened," *Bennett, supra,* remains the same under the statutory test. But the statute now, with consequences yet to unfold, further requires a showing that the change in condition was clearly not anticipated and could not reasonably have been anticipated at the time of the award.

## II.

■ When this case was argued in the Workers' Compensation Court of Appeals, the parties apparently assumed the 1992 amendment for a change-of-condition governed. We think, however, the pre–1992 law applies.

When Franke and Fabcon/CNA entered into their settlement stipulation in 1986, their agreement, which necessarily had to be in conformity with the Act, was subject to the then-existing reopening provisions of the Act.[4] If their settlement agreement purported to preclude the reopening of the agreement contrary to the then existing case law, such broader preclusion would not be in conformity with the Act and would be ineffective. *Senske v. Fairmont & Waseca Canning Co.,* 232 Minn. 350, 359, 45 N.W.2d 640, 647 (1951) (a settlement stipulation which is fair and reasonable and in conformity with the Act is valid, "if it does not purport to establish such finality of settlement as to preclude a reopening of any award * * *.").

Here the settlement agreement was negotiated, executed, and approved when the pre-amendment version of section 176.461 was in effect. The settlement was approved under Minn.Stat. § 176.521 as "reasonable, fair, and in conformity with this chapter." In other words, the 1986 settlement was in conformity with the Workers' Compensation Act as of that time and is not subject to modification by the 1992 amendments. *Cf. Guerrero v.*

---

4. Minn.Stat. § 176.521 is the Settlement of Claims section. Under subdivisions 1 and 2, a settlement agreement where both sides are represented by an attorney is not only valid but is "conclusively presumed to be reasonable, fair, and in conformity with this chapter * * *." But subdivision 3 of the same section further provides, "Notwithstanding the provisions of subdivisions 1, 2, or 2a, *or any provision in the agreement of settlement to the contrary,* * * * the court of appeals may set aside an award made upon a settlement, pursuant to this chapter." (Emphasis added.)

*Wagner,* 310 Minn. 351, 246 N.W.2d 838 (1976) (attorney fees authorized by statute and made a part of a settlement agreement were binding and enforceable upon compensation judge's approval of the settlement, notwithstanding a subsequent amendment of the statute).

The record here establishes beyond dispute there was "cause," as that term was understood in 1986, for vacating the award. As noted earlier, the Workers' Compensation Court of Appeals agrees that Franke's medical condition has substantially deteriorated since the settlement. And because the settlement agreement reciting the award includes compensation for a period of temporary total disability of which the hip condition was a part, see footnote 1, *supra,* there is a causal relationship between the injuries covered by the award and the employee's present worsened condition. The fact that the award is the result of a negotiated settlement rather than a contested case has no bearing on the justification for reopening because the authority to reopen is the same in either case.[5]

We reverse the denial of the petition to vacate and remand for purpose of setting aside the award and granting a hearing.

Reversed and remanded.

Employee is awarded $400 in attorney fees.

---

**5.** Professor Larson believes this is "an eminently sensible result, particularly in view of the great volume of claims disposed of by agreement. After all, if the commission or board, with all its expertise in evaluating claims, frequently fails to predict the future accurately, can it really be assumed that the worker and employer will be any better at foretelling the extent or duration of disability which will result from a particular injury?" 3 Arthur Larson, *The Law of Workmen's Compensation* § 81.41 (1993) (footnotes omitted).