**Darryl E. DAVIS, Relator,**

v.

**SCOTT MOELLER COMPANY, Iowa National Mutual Insurance Co., and Minnesota Insurance Guaranty Association/GAB Business Services, Respondents.**

**No. C8–94–1505.**

Supreme Court of Minnesota.

Nov. 23, 1994.

Jeffrey R. Hannig, Hannig Law Office, P.A., Moorhead, for relator.

James Waldhauser, Denise D. Lemmon, Cousineau, McGuire & Anderson, Minneapolis, for respondents.

## OPINION

KEITH, Chief Justice.

The Workers' Compensation Court of Appeals denied a petition to vacate an award on stipulation. We reverse and remand.

Darryl E. Davis sustained a compensable low back injury on August 13, 1982, while employed by Scott Moeller Company, a grain cleaning operation located in Moorhead, Minnesota.[1] Diagnostic testing indicated bulging discs at L3–4 and L4–5, and physicians rated Davis' permanent partial disability at 25%. In September 1984, Davis and the employer/insurer, both represented by counsel, negotiated "a full, final and complete settlement, * * * exclusive of medical benefits." The settlement agreement was approved by a compensation judge, and an award was issued on September 28, 1984.

In 1987, Davis sought medical care for chronic low back pain with tingling numbness in the left thigh. The medical records indicate he was working as a mechanic at that time. A CT scan showed bulging discs at L2 through L5. In 1989, Davis was seen by a number of physicians for progressive pain in the back and left leg. An MRI indicated he had developed some mild canal stenosis at L2–3 and L3–4, but it was not thought to be significant. At this time he was working as a "partsman" in an auto parts store.

In early fall 1991, Davis' low back symptoms worsened. Diagnostic testing indicated severe central canal stenosis at L3–4 and L4–5, impingement on the right and left L4 roots at L3–4, and impingement on the left L5 root at the L4–5 level. Davis was then referred to Dr. Dennis Becker, neurosurgeon, who performed a "left sided" decompressive hemilaminectomy at L3–4 and L4–5 and a "left sided" diskectomy at L4–5 on

---

1. At the time of injury, the employer was insured by Iowa National Mutual Insurance Company. At some point, Iowa National went through insolvency proceedings, and MIGA/GAB Business Services, Inc. assumed Iowa National's obligations.

October 15, 1991. The doctor's "final diagnosis" was "spinal stenosis L3–4, L4–5, herniated disc left L4–5." In December 1991, Davis returned to work with restrictions.

In February 1992, Davis was examined by Dr. Gilbert Westreich, orthopedic surgeon, at the request of the employer/insurer. Dr. Westreich noted that Davis was working full-time and that the October 1991 surgery had "clearly been a success." He also said the surgery was reasonable, necessary, and causally related to the 1982 work injury:

> [Davis] presumably had some predisposition to spinal stenosis and low back distress, but the event of 1982 was clearly the precipitating event for his problems. As the years progressed, the degenerative disease in his back progressed as it would have whether he had the accident in 1982 or not, but clearly the accident was a significant contributing factor in the progression of his problems.

In April 1992, Davis took a new job that involved more lifting. Over the next few months, his back pain increased; and on July 8, 1992, Dr. Becker recommended he not work for a couple of weeks. When Davis failed to improve, he was referred to Dr. Dennis Sollom, physical medicine and rehabilitation specialist, who diagnosed chronic lumbosacral musculoligamentous sprain/strain and SI joint dysfunction. Dr. Sollom recommended physical therapy. In September 1992, Davis complained of increased stiffness through the low back as well as pain, stinging and burning in the left buttock going down the left leg. In early October 1992, Davis participated in a functional capacities evaluation, the results of which indicated he was capable of work in the sedentary or light range. However, during and after the functional capacities evaluation, Davis had complaints of pain in his low back, left leg, neck and upper extremities. When Davis returned to Dr. Sollom for re-evaluation on October 30, 1992, the doctor noted Davis was much more distraught and in quite a bit more discomfort and that it was "related more" to the neck, upper back, and upper

extremity problems. Dr. Sollom said Davis was "in no way, shape, or form ready to return to trying any kind of work at this time." In March 1993, Dr. Sollom completed a "Physician's Certification of Borrower's Total and Permanent Disability" form for the Department of Education,[2] certifying that Davis was unable to work as a result of his lumbar spine, cervical spine and upper extremity conditions; and the same medical conditions later served as the basis for his eligibility for social security disability benefits.

Davis filed a petition to vacate the 1984 award on stipulation on grounds of a substantial change in medical condition. The Workers' Compensation Court of Appeals denied the petition, concluding that although there was "no dispute that [Davis'] current low back condition and need for surgery resulted from the [1982] personal injury," Davis had "failed to establish the causal relationship between the personal injury and any current inability to work." *Davis v. Scott Moeller Company,* ___ Workers' Comp. Dec. ___, slip op. at 6 (WCCA, filed July 6, 1994). In arriving at this decision, the WCCA observed that any change in Davis' ability to work appeared to be related to his neck and arm problems rather than his low back problems.

Under the law applicable to this case, a compensation award resulting by either stipulation or contested case may be vacated "for cause," Minn.Stat. § 176.461 (1984), "and our case law [has] identified four grounds which could constitute 'cause,' namely, (a) fraud, (b) mistake, (c) newly-discovered evidence, and (d) substantial change in the employee's condition." *Franke v. Fabcon, Inc.,* 509 N.W.2d 373, 376 (Minn.1993). In change of condition cases, we have long held that "cause" sufficient to justify reopening an award exists "upon a prima facie showing by the employee that evidence of subsequent developments exists which will establish that his condition has substantially worsened, and that there is a causal relationship between the injury covered by the award and his

---

2. This was in connection with a federally guaranteed student loan which Davis had obtained at some point.

present worsened condition." *Bennett v. Hoiseth Motor Sales,* 302 Minn. 534, 535, 224 N:W.2d 148, 149 (1974) (citations omitted). The inquiry, then, is on "the extent of improvement or worsening of the injury on which the original award was based." *Franke,* 509 N.W.2d at 377. Of course, if there is no causal relation between the injury covered by the award and the subsequent worsened condition, such as when the only change is the progression of a personal weakness or disease, reopening is inappropriate, *e.g., Jacobson v. Uptown Transfer & Storage Co.,* 268 Minn. 336, 129 N.W.2d 41 (1964); but a concurrent disability resulting from medical problems independent of the injury covered by the award does not limit the WCCA in its authority to reopen the award and grant a hearing for a determination of the facts with reference to the disability for which compensation is sought. *See Bennett v. Hoiseth Motor Sales,* 302 Minn. 534, 224 N.W.2d 148 (1974); *Dudansky v. L.H. Sault Constr. Co.,* 244 Minn. 369, 70 N.W.2d 114 (1955).

In this case, there is no serious dispute that Davis' low back condition has deteriorated considerably since the award on stipulation, warranting surgery in 1991. The medical records also reflect Davis' low back condition, in part at least, was the cause of his total disability in 1992. As for whether his cervical spine and upper extremity conditions amount to intervening causes, sufficient to suspend the employer/insurer's liability, that, we believe, is better resolved at an evidentiary hearing. We therefore reverse the denial of the petition to vacate the award and remand for purposes of setting aside the award and granting a hearing.

Reversed and remanded.

Employee is awarded $400 in attorney fees.