**David L. BLACK, Relator,**

v.

**HONEYWELL, INC., Self–Insured/Sedgwick James of Minn., Respondent.**

**No. C9–96–593.**

Supreme Court of Minnesota.

July 25, 1996.

John T. Anderson, Minneapolis, for relator.

Michael J. Patera, Minneapolis, for respondent.

Michael Schoff, St. Paul, for intervenor Minn. Dept. of Human Services.

## OPINION

STRINGER, Justice.

Certiorari on the relation of David L. Black to review a decision of the Workers' Compensation Court of Appeals denying his petition to vacate an award on stipulation. We affirm.

David L. Black has a long history of back problems, dating back to at least 1977 when he sustained compression fractures at the T12–L1 in an automobile accident when he was still in high school. Following a course of chiropractic care, Black's back problems resolved, and he subsequently was employed in various positions as a machine operator, restaurant worker, and an automobile mechanic, before becoming employed as a janitor for Honeywell in 1979. While working for Honeywell, Black sustained compensable low back injuries in 1980, 1981, 1982, 1983 and 1984. Many of Black's symptoms were similar over the years, generally involving mid-thoracic and parathoracic pain, and in 1984, Black's physician noted that he had

spasm from T8 through T12. A CT scan done in October 1984 showed mild degenerative central bulging of the disc annulus at L4–5, mild scoliosis and moderately severe hyperlordosis, an "old compression fracture of [the] L1 with disruption of the adjacent T12–L1 and L1–2 disc with moderate disc space narrowing." In January 1985, Honeywell registered Black with the Special Compensation Fund for a 10.5% whole body impairment for the old compression fracture at L1 and decreased disc space at T12 and L1, L2. In June 1985, Black sustained a non-compensable injury while lifting a cooler out of the trunk of his car; and in July 1985, his employment with Honeywell was terminated. In October 1985, Black began working as a school bus driver.

In December 1985, Black was examined by Dr. Michael Davis, an orthopedic consultant. Dr. Davis believed Black had a chronic lumbosacral strain superimposed on old compression fractures at T11 and T12. Dr. Davis also said Black had "permanent residuals referable to his low back" and that his "problem [was] due to a combination of factors including the automobile accident in 1977, the several work related injuries, and the non-work related injury of June 1985." Dr. Davis thought it too early to assign a disability rating but suggested Black observe restrictions on lifting over 25 pounds, bending, and sitting or standing for prolonged periods of time.

In March 1990, Black sought medical care at the University of Minnesota for complaints of low back pain. This was diagnosed as chronic "non specific" low back pain, as diagnostic studies were not thought significant, and Black was advised to enroll in a rehabilitation program. In the summer of 1990, Black left his bus driving job, became a truck driver, and continued to have back problems similar to those he had at Honeywell.

In January 1991, Black was again seen at the University of Minnesota Hospital for his low back pain. Because he was doing "reasonably well" and did not wish to pursue surgical intervention, he was advised to continue with a home conditioning program. He was also told that if he felt chiropractic care helped, there was "no contra-indication" to

that. Black thereafter sought intermittent chiropractic care.

Meanwhile, Black filed a claim for permanent partial disability benefits, and Honeywell filed a notice of intention to discontinue temporary partial benefits. In late 1991, Black and Honeywell negotiated a settlement for $29,000, less attorney fees. The settlement agreement recited that Black accepted the lump sum payment "as a full, final and complete settlement" for all claims, except claims for medical benefits, arising out of his injuries at Honeywell. The settlement agreement incorporated an earlier agreement that included payment for an 8% impairment to close out a claim for 10.5%. The settlement agreement was approved and an award issued on December 2, 1991. In October 1993, Black moved a child's desk up a staircase at his home; and at 4:00 a.m. the following morning, he awoke with severe back pain. This was diagnosed as a recurrent back strain and treated with physical therapy. An MRI done in November 1993 showed a moderate disc herniation at T11–T12 and broad based disc bulging at L4–5. After a discussion of treatment options, conservative management was recommended at that time. In March 1994, however, following a referral to Dr. Garry M. Banks at the Midwest Spine Institute and additional diagnostic testing, Black underwent surgical fusion from T11 to L2 with instrumentation for what was diagnosed as degenerating discs T11–12, L1–2. By October 1994, Black reported that he was "much improved," and Dr. Banks thought the fusion was progressing well. Dr. Banks rated Black's whole body impairment at 34.5% and recommended permanent work restrictions, including a lifting limit of 20 pounds.

Black filed claims for temporary total, permanent partial, rehabilitation and medical benefits, and he also petitioned to have the 1991 award on stipulation vacated on grounds of substantial change in medical condition. In August 1994, a compensation judge dismissed the claims for temporary total disability and rehabilitation benefits based on the 1991 award; and in December 1994, the WCCA denied Black's petition to vacate because the dispute over whether Black's cur-

rent condition was causally related to the injuries covered by the 1991 settlement would be decided by a compensation judge following an evidentiary hearing on the still pending medical and permanent partial disability benefits claims.

In April 1995, an evidentiary hearing was conducted for purposes of determining the causal relationship between the work injuries and medical expenses incurred by Black between November 1993 and May 1994.[1]

The compensation judge determined that the disputed medical expenses were causally related to Black's work injuries. Honeywell appealed the causation issue to the WCCA, and Black filed an amended petition to vacate the 1991 award on stipulation, asking that it be decided along with Honeywell's appeal. The WCCA affirmed the compensation judge's determination that the disputed medical care was causally related to the work injuries but denied the petition to vacate the 1991 award on stipulation. Black challenges the denial of his petition to vacate the prior award.

Under the applicable law, the award on stipulation in this case may be vacated if there has been an unanticipated substantial change, or deterioration, in the employee's medical condition causally related to the compensable injury since the time of the settlement. *Franke v. Fabcon, Inc.,* 509 N.W.2d 373, 377 (Minn.1993). Using the factors developed in *Fodness v. Standard Cafe,* 41 Workers' Comp. Dec. 1054, 1060–61 (WCCA 1989)—change in diagnosis, change in ability to work, additional permanent partial disability, necessity of more costly and extensive medical care, causal relationship between injury covered by the settlement and current condition—the WCCA determined there was insufficient showing of a substantial change in medical condition to justify setting the 1991 award aside. *Black v. Honeywell, Inc.,* Workers' Comp.Dec. ——, (WCCA filed Feb. 28, 1996). We believe that in so ruling the WCCA did not abuse its discretion, which we have said is "instinct with considerable latitude," *Krebsbach v. Lake Lillian Coop. Creamery Ass'n,* 350 N.W.2d 349, 354 (Minn.1984) (quoting

*Mattson v. Abate,* 279 Minn. 287, 292, 156 N.W.2d 738, 741 (1968)), where the medical records reflect little change in diagnosis or ability to work since the 1991 settlement. As for increase in disability and intervention of serious back surgery, Black may pursue his claims for permanent partial disability and medical benefits without vacating the settlement. Having made our own independent review of the extensive medical history and testimony, we cannot say that the WCCA abused its considerable discretion in denying Black's petition.

Affirmed.

KEITH, Chief Justice, dissenting.

I respectfully dissent. To me the record established there was "cause," as that term was understood at the time of settlement in 1991, for vacating the award.

The facts, briefly stated, are these. David L. Black worked as a janitor for Honeywell. Over the course of his employment, Black sustained a number of compensable lumbar spine injuries. In that the disability caused by Black's work injuries was made substantially greater because of a pre-existing thoracolumbar spine disability, in January 1985, Honeywell registered Black with the Special Compensation Fund for a 10.5% whole body impairment. In late 1991, Black and Honeywell, both represented by counsel, negotiated "a full, final and complete settlement" for all claims arising out of Black's injuries at Honeywell, exclusive of medical benefits. The settlement agreement incorporated an earlier agreement that included payment for an 8% impairment to close out a claim for a 10.5% impairment. The settlement agreement was approved and an award issued on December 2, 1991.

In October 1993, Black had an onset of low back pain at home after carrying a child's desk up a flight of stairs; and on March 4, 1994, Black underwent an "anterior/posterior fusion of T11 to L2 with reduction of kyphosis and posterior instrumentation." Black's surgeon rated the ensuing impairment at 34.5% and said that 50% of Black's disability

---

1. Questions concerning the necessity for the disputed medical care and the claim for permanent partial disability benefits were not considered at this proceeding.

was due to his work injuries and 50% to his nonwork injuries. Honeywell's medical consultant said that Black's recurrent back problem was unrelated to his work at Honeywell.

Black sought temporary total, permanent partial, rehabilitation and medical benefits. On motion of Honeywell, the claims for temporary total and rehabilitation benefits were dismissed as having been closed out by the 1991 award on stipulation and terms of the agreement. Black filed a petition to vacate the 1991 award on stipulation on grounds of substantial change in condition; and in response, Honeywell agreed that Black's thoracolumbar problem had "worsened considerably" but vigorously disputed that it was causally related to his work at Honeywell. In December 1994, the WCCA denied the petition, concluding it was premature where the issue of causation, which as the WCCA put it appeared to be the "principal issue in dispute," would of necessity be decided on the merits by a compensation judge following an evidentiary hearing on the remaining (and still pending) claims for medical and additional permanent partial disability benefits. *Black v. Honeywell, Inc.,* (WCCA filed Dec. 9, 1994).

The claims for medical and permanent partial disability benefits went to hearing, the compensation judge found causation, Honeywell appealed, and Black filed an amended petition to vacate the 1991 award. The WCCA affirmed the compensation judge's causation determination but denied the petition to vacate the 1991 award, concluding, among other things, that although Black's condition may have deteriorated, leading to serious medical care, and "likely" resulted in a "significant increase" in disability, he could claim additional permanent partial disability and medical benefits without vacating the prior award. *Black v. Honeywell, Inc.,* —— Workers' Comp.Dec. —— (WCCA filed Feb. 28, 1996). But Black's claims for wage loss and rehabilitation benefits have been dismissed because of the settlement agreement and award based thereon.

Under the law that applies to this case, the award may be vacated on grounds that there has been an unanticipated substantial change, or deterioration, in the employee's medical condition causally related to the compensable injury since the time of the settlement. *Franke v. Fabcon, Inc.,* 509 N.W.2d 373, 377 (Minn.1993). In "change-of-condition" cases the focus is on whether there has been a substantial or significant change in condition (and if there is causation). *Id.* (citing *Turner v. Federal Reserve Bank of Mpls.,* 298 Minn. 161, 167, 213 N.W.2d 414, 418 (1973) ("Only where there is substantial additional disability which has occurred since the award was made is the commission justified in setting it aside."); *Wollschlager v. Standard Constr. Co.,* 300 Minn. 550, 551, 220 N.W.2d 346 (1974); *Bennett v. Hoiseth Motor Sales,* 302 Minn. 534, 224 N.W.2d 148, 149 (1974) ("symptoms have worsened and increased and also show a significant increase in his disability")). The inquiry, then, is on "the extent of improvement or worsening of the injury on which the original award was based." *Id., quoted in Davis v. Scott Moeller Co.,* 524 N.W.2d 464, 467 (Minn. 1994). This inquiry compares "the employee's *condition* as it was at the time of the petition to vacate with what the *condition* had been at the time of the settlement, unlike a mutual mistake case where the inquiry focuses on what the situation was and what was known about it at the time of settlement." *Franke,* 509 N.W.2d at 377. In conclusion, where initially in protesting causation Honeywell conceded the worsening in medical condition, where the WCCA agrees that Black's medical condition has deteriorated, likely resulting in significant added impairment, and where causation has now been judicially determined, I believe that pursuant to *Franke,* the petition to vacate the prior award should have been granted.